1   CHRISTOPHER M. YOUNG (Bar No. 163319)
    christopher.young@dlapiper.com
2   BROOKE KILLIAN KIM (Bar No. 239298)
    brooke.kim@dlapiper.com
3   KATHERINE J. LARSON (Bar No. 259556)
    katherine.larson@dlapiper.com
4   DLA PIPER LLP (US)
    401 B Street, Suite 1700
5   San Diego, CA 92101-4297
    Tel: 619.699.2700
6   Fax: 619.699.2701

7   Attorneys for Defendant
    Pfizer Inc.

8



FILED
CLERK, U.S. DISTRICT COURT

JUL 14 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                                          LACV11-5801GW(Ex)

12   STEVEN HEDLIN, GINA           CASE NO.
     MCKLUSKY, JOHN CHRISTOPHER
     SMITH, MICHAEL NEWTON,        **NOTICE OF REMOVAL BY**
13   VICKY SNYDER, ALAN TERRIO,    **DEFENDANT PFIZER INC.**
     JENNIE TERRIO, HEATHER
14   YOUNG, JERRY HANSON,
     CHARLES DOMAN TH, MALISSA
15   BRYANT, KATHY BURNETT,
     DIXIE CARVALHO, NANCY
16   DUCOTE, ROBERT EGUINA, JOHN
     WHITE, DEBRA FLETCHER,
17   CHARLA FERRELL, ABBY
     CHARLAND, JOHN BARTLEY,
18   TAMICA ROBINSON, REBECCA
     LEE, SHELLIE JONES, WILLIAM
19   HINCKLEY, ANN GORDON,
     THERESA LERCH, SHERRYLYNN
20   COUCH and HENRY COUCH JR.,
     CHANTAE WILLIAMS, BARRY
21   BRANDKAMP, JOHN AUSTIN, JR.,
     STEPHAN COOPER, LISA ROOKS,
22   MARILYN LOCKRIDGE, JAMES
     LOWE, MICHELLE RABER, JUDITH
23   LITTLE, FERRAH SZYMANSKI,
     JEFFREY HILL, DAVID JOHNSON,
24   AMY HENDERSON, DEBORAH
     WELTHER, SANDRA SMITH,
25   MICHELLE DELUCIA, CASANDRA
     BOIRE, ERNESTINE DAVIS, SCOTT
26   CASSADY, RALPH CONDON,
     ELIZABETH JAUSEL, SYBRENA
27   MALSOM, ARLENE KORDICK,
     KATHY S. DAVIS, DAVID A.
28   DUBREY, WALTER EMMERSON,

1   CHRISTOPHER M. YOUNG (Bar No. 163319)
    christopher.young@dlapiper.com
2   BROOKE KILLIAN KIM (Bar No. 239298)
    brooke.kim@dlapiper.com
3   KATHERINE J. LARSON (Bar No. 259556)
    katherine.larson@dlapiper.com
4   DLA PIPER LLP (US)
    401 B Street, Suite 1700
5   San Diego, CA 92101-4297
    Tel: 619.699.2700
6   Fax: 619.699.2701

7   Attorneys for Defendant
    Pfizer Inc.

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11  STEVEN HEDLIN, GINA                    CASE NO.
12  MCKLUSKY, JOHN CHRISTOPHER
    SMITH, MICHAEL NEWTON,                 **NOTICE OF REMOVAL BY
13  VICKY SNYDER, ALAN TERRIO,             DEFENDANT PFIZER INC.**
    JENNIE TERRIO, HEATHER
14  YOUNG, JERRY HANSON,
    CHARLES DOMAN TH, MALISSA
15  BRYANT, KATHY BURNETT,
    DIXIE CARVALHO, NANCY
16  DUCOTE, ROBERT EGUINA, JOHN
    WHITE, DEBRA FLETCHER,
17  CHARLA FERRELL, ABBY
    CHARLAND, JOHN BARTLEY,
18  TAMICA ROBINSON, REBECCA
    LEE, SHELLIE JONES, WILLIAM
19  HINCKLEY, ANN GORDON,
    THERESA LERCH, SHERRYLYNN
20  COUCH and HENRY COUCH JR.,
    CHANTAE WILLIAMS, BARRY
21  BRANDKAMP, JOHN AUSTIN, JR.,
    STEPHAN COOPER, LISA ROOKS,
22  MARILYN LOCKRIDGE, JAMES
    LOWE, MICHELLE RABER, JUDITH
23  LITTLE, FERRAH SZYMANSKI,
    JEFFREY HILL, DAVID JOHNSON,
24  AMY HENDERSON, DEBORAH
    WELTHER, SANDRA SMITH,
25  MICHELLE DELUCIA, CASANDRA
    BOIRE, ERNESTINE DAVIS, SCOTT
26  CASSADY, RALPH CONDON,
    ELIZABETH JAUSEL, SYBRENA
27  MALSOM, ARLENE KORDICK,
    KATHY S. DAVIS, DAVID A.
28  DUBREY, WALTER EMMERSON,

1   LEVI MCCAIN, BOBBY J.
    HOLLOWELL, MICHAEL HOOD and
2   LAURA HOOD, KANDIEANN D.
    KLINEDINST, WILBERT LANO JR.,
3   LINDA S. UBBELT and MICHAEL B.
    LIEBELT, CAMRIN J. MCDONALD,
4   JIMMY W. MOFFETT, KENNETH
    NAPIER, AUBREY OXENDINE,
5   CHAROLOTTE PARKER, SANDY
    M. PRINCE, RENEE SINGLETON,
6   KAY P. SLOCUM, VICTORIA
    SMALL WOOD, NANCY T.
7   SOUTHERLIN, ROBYN K.
    SWEITZER, JESSICA TAISTO,
8   KAREN J. WALKER, MICHAEL G.
    WEYRAUCH, MICHAEL
9   WHEALEY, SHELIA WHITE,
    ANDRE YOUNG, DEREK
10  CHARPENTIER, individually, and as
    surviving son of Jessica Charpentier,
11  deceased, SHELBY GIESE is the
    personal representative of the estate of
12  Laura Giese, deceased, LEROY
    DEGNER, individually, and as
13  surviving spouse of Marie Degner,
    deceased, SALLY PORTER is the
14  surviving mother of Dennis Jensen,
    deceased, PATRICIA HAINES-
15  GENIESSE, individually, and us
    surviving spouse of Robert Geniesse,
16  deceased, SHEEN A ALLEN,
    individually, and as the surviving
17  spouse of Lew Allen, deceased,
    CASEY WHITTINGTON,
18  individually, and as the surviving
    daughter of Robert Warring, deceased,
19  SUSAN CAFRO, individually, and as
    the mother of Daniel Albrizio,
20  deceased, VIRGINIA TICE,
    individually, and as die surviving
21  spouse of Dustin Tice, deceased, RUTH
    JOHNSON, individually, and as
22  surviving spouse of Carl Johnson,
    deceased, CATHERINE BENNETT,
23  individually, and as surviving spouse of
    Joseph E. Bennett, deceased, ERIC
24  HOWARD, individually, and as
    surviving spouse of Stormie Howard,
25  deceased, EARNEST1NE COLBURN,
    individually, and as surviving spouse of
26  James Colburn, LORENE COLLIER,
    individually, and as surviving spouse of
27  Freddie Collier, MARTHA WAGES,
    individually, and as surviving spouse of
28  James Wages II, deceased, JEAN

-2-

DLA PIPER LLP (US)
San Diego

1  CARROLL, individually, and as
2  surviving spouse of Dennis Shoemaker,
   deceased,

3            Plaintiffs,

4       v.

5  PFIZER INC., a corporation;
   MCKESSON CORP., a corporation;
6  DOES 1-50,

7            Defendants.

8

9       TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL

10 PARTIES AND THEIR ATTORNEYS OF RECORD:

11      PLEASE TAKE NOTICE that Defendant PFIZER INC. ("Pfizer"), by its

12 undersigned attorneys, hereby removes the above-entitled state court action, Case

13 No. BC464579, from the Superior Court of the State of California, County of Los

14 Angeles to the United States District Court for the Central District of California on

15 the basis of diversity jurisdiction. In support of this Notice of Removal, Pfizer

16 states as follows:

17 I.    **THE STATE COURT ACTION**

18      The removed action was filed on or about July 1, 2011 in the Superior Court

19 of the State of California in the County of Los Angeles, entitled *Steven Hedlin, et*

20 *al. v. Pfizer Inc., et al.* and assigned Case No. BC464579. The allegations in the

21 complaint relate to the prescription medication Chantix. The Complaint asserts

22 causes of action for negligence, strict products liability (design defect), strict

23 product liability (failure to warn), breach of express warranty, breach of implied

24 warranty, fraudulent misrepresentation and concealment, negligent

25 misrepresentation and concealment, gross negligence, unjust enrichment, punitive

26 damages, violation of California's Consumers' Legal Remedies Act, loss of

27 consortium, and wrongful death. As required by 28 U.S.C. § 1446(a), attached are

28 /////

1    copies of all state court process, pleadings and orders served upon Pfizer in the

2    removed case.  (*See* Exhibit A.)

3    **II.      THE MULTI-DISTRICT LITIGATION PROCEEDING**

4           Numerous product liability actions alleging personal injuries from Chantix

5    have been brought in federal courts across the country.  On October 1, 2009, the

6    Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 2092, *In*

7    *Re: Chantix (Varenicline) Products Liability Litigation,* in the Northern District of

8    Alabama to coordinate all federal products liability litigation involving Chantix.

9    Judge Inge Johnson was assigned to preside over the MDL.  Pfizer intends to

10   identify this action as a "tag-along" to the Chantix MDL proceeding.

11   **III.     BASIS FOR REMOVAL – DIVERSITY JURISDICTION**

12          This case is properly removed under 28 U.S.C. § 1441 because it is a civil

13   action that falls within the Court's original jurisdiction under 28 U.S.C. § 1332

14   (diversity of citizenship).  The matter in controversy exceeds the sum of $75,000,

15   exclusive of interest and costs, and complete diversity exists between the properly

16   considered plaintiffs and defendants.

17   **IV.     THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE**

18          **SATISFIED**

19          Plaintiffs commenced this action on July 1, 2011 and have not yet served

20   process on Pfizer.  This Notice of Removal is therefore timely filed within 30 days

21   of service of the initial pleading.  28 U.S.C. § 1446(b).

22          Consent to removal by Defendant McKesson Corporation ("McKesson") is

23   not required both because McKesson has not been served and because McKesson

24   has been fraudulently joined.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190,

25   1193 n.1 (9th Cir. 1988).

26          Venue is proper in this Court because the United States District Court for the

27   Central District of California embraces the county in which the state court action is

28   now pending.  *See* 28 U.S.C. §§ 84(c)(1), 1441(a).

1    Pursuant to 28 U.S.C. § 1446(d), Pfizer has filed this Notice of Removal

2  concurrently with the state court in which the action is currently pending.  In

3  addition, a Notice of Filing Notice of Removal has been served on Plaintiffs'

4  counsel.[1]  Attached is a copy of the Notice of Filing of Notice of Removal and

5  proof of service on Plaintiff of same.  (*See* Exhibit B.)

6  **V.    THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS**

7  **SATISFIED**

8    The amount in controversy for this matter exceeds $75,000, exclusive of

9  interest and costs.  See 28 U.S.C. § 1332.  Where, as here, a complaint does not

10  specify the amount of damages being sought, the defendant bears the burden of

11  demonstrating that the amount in controversy requirement is satisfied.  *Kenneth*

12  *Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D.

13  Cal. 2002) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F. 3d 373, 376 (9th

14  Cir. 1997), and *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)).  That

15  burden is "easily met" if "it is facially apparent from the allegations in the

16  complaint that plaintiff's claims exceed $75,000."  *Id.*

17    The Complaint alleges that the use of Chantix caused 92 Plaintiffs to sustain

18  "severe and permanent physical injuries and/or death, severe emotional distress,

19  economic losses and other damages."  Compl. ¶¶ 303, 316, 325, 340, 374.

20  Plaintiffs seek to recover compensatory damages, including loss of earnings,

21  impaired earning capacity, past and future medical expenses, and damages for

22  mental and emotional distress; punitive damages; and restitution.  *See id.* at 67-68.

23  Based on a fair reading of the severity of injuries alleged and substantial and wide-

24  ranging damages sought, it is facially apparent that the Complaint seeks damages in

25  [1] Nothing in this Notice of Removal or related documents shall be interpreted as a waiver or relinquishment of

26  Pfizer's right to assert any defense or affirmative matter in this proceeding.  If any question arises as to the propriety of this removal, Pfizer requests the opportunity to conduct discovery or brief any disputed issues and to present oral

27  argument in support of their position that this case is properly removable. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (stating that "[w]here fraudulent joinder is an issue," courts "will go somewhat further"

28  than the allegations of a complaint, since "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent").

1  excess of $75,000, thereby satisfying the amount-in-controversy requirement for

2  diversity jurisdiction.

3  ## VI.  COMPLETE DIVERSITY EXISTS BETWEEN PROPERLY CONSIDERED PARTIES

4

5  Defendant Pfizer is, and at the time of the filing of this action was, a

6  Delaware corporation existing under the laws of the State of Delaware, having its

7  principal place of business in the State of New York. *See* Compl. ¶ 85.  Defendant

8  Pfizer is therefore a citizen of Delaware and of New York for purposes of federal

9  diversity jurisdiction.

10  Defendant McKesson is, and at the time of the filing of this action was, a

11  Delaware corporation with its principal place of business in the State of California.

12  *See id.* ¶ 93.  McKesson is therefore a citizen of Delaware and California for

13  purposes of federal diversity jurisdiction.  As described below, however, the

14  citizenship of McKesson should be disregarded for two separate and independent

15  reasons:  it is fraudulently joined, and it is not a necessary and indispensable party.

16  The Complaint names 92 plaintiffs residing in the following 35 states: Texas,

17  Ohio, Pennsylvania, Michigan, Florida, Colorado, California, Minnesota,

18  Oklahoma, Tennessee, Washington, Kentucky, Illinois, Arizona, New York,

19  Oregon, North Carolina, Mississippi, Louisiana, Maryland, Nevada, Utah, New

20  Jersey, Alabama, Rhode Island, Wisconsin, Georgia, Missouri, Maine, Kansas,

21  Iowa, Massachusetts, Virginia, South Carolina, and New Mexico. *See* Compl. ¶¶ 1-

22  92.  The citizenship of each plaintiff is alleged to be his or her state of residence.

23  As described below, however, the citizenships of plaintiffs Derek Charpentier,

24  Ralph Condon, David A. Dubrey, and Renee Singleton (all of New York), as well

25  as any other diversity-destroying plaintiffs, should be disregarded because those

26  plaintiffs are procedurally misjoined.  The claims of those plaintiffs should be

27  severed pursuant to Federal Rule of Civil Procedure 21.  Upon severance of those

28  /////

1  non-diverse plaintiffs' claims, complete diversity exists between Pfizer and

2  Plaintiffs.

## VII.   McKESSON'S CITIZENSHIP SHOULD BE DISREGARDED IN ASSESSING COMPLETE DIVERSITY

For two separate and independent reasons, McKesson's citizenship should be disregarded in assessing whether complete diversity exists.

### A.   McKesson is Fraudulently Joined

"[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been "fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F. 3d 1061, 1067 (9th Cir. 2001); *see also Triggs v. John Crump Toyota, Inc.*, 154 F. 3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.") Joinder is fraudulent "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067.

Here, McKesson is fraudulently joined.  Nearly every allegation in the Complaint is directed at Pfizer and describes alleged wrongdoings by Pfizer.  Pfizer is alleged, for example, to have failed to adequately study Chantix to determine the risk of serious injury and/or death associated with its use by, among other failures, "[i]ntentionally excluding certain patients and populations from clinical trials" and "[i]ntentionally ignoring any proper evaluation of depression, aggression, suicide, suicidal ideation, suicidal thoughts, suicidal tendencies, and other injuries…like diabetes[.]" Compl. ¶ 214(a), (b).  The Complaint also alleges that Pfizer made "repeated denials of a relationship between neuropsychiatric side effects including behavior changes and Chantix use," *id.* ¶ 234, and "has repeatedly denied the mounting scientific evidence linking Chantix to serious injury and death," *id.* ¶ 239.

According to the Complaint, moreover, Pfizer allegedly "sponsored continuing medical education courses for doctors that showcase Chantix as a safe

-7-

DLA PIPER LLP (US)
SAN DIEGO

1   and effective smoking cessation, but...downplay or omit information about the

2   serious adverse events of Chantix and about the types of people excluded from the

3   clinical trials." Compl. ¶ 206. Pfizer also allegedly "sponsored free smoking

4   cessation presentations for consumers that also downplayed or omitted information

5   about the serious adverse events of Chantix." *Id.* ¶ 207.

6        The Complaint also alleges that "prior to November 20, 2007, the Chantix

7   label did not adequately disclose its link with neuropsychiatric adverse effects,"

8   Compl. ¶ 254, and that even after FDA regulations were promulgated precisely to

9   allow Pfizer to strengthen warning labels without regular pre-approval, Pfizer "did

10   not change the Chantix label until November 2007," *Id.* ¶ 255. The Complaint

11   alleges that when Pfizer changed the Chantix label in November 2007, the "label

12   change did not adequately warn about the neuropsychiatric and other serious side

13   effects alleged herein, and [Pfizer] consistently minimized and diluted Chantix's

14   association with these side effects." *Id.* ¶ 256. Similarly, the Complaint alleges

15   that when Pfizer changed the Chantix label again in January 2008, "this label

16   change remained inadequate and [Pfizer] should have made it much sooner." *Id.*

17   ¶ 261. The Complaint makes similar allegations with regard to the label change

18   Pfizer made in May 2008. *See id.* ¶ 273. In addition, Pfizer allegedly "embark[ed]

19   on a massive and deceptive publicity campaign to downplay the connection

20   between Chantix and neuropsychiatric and other adverse events...to insist that

21   Chantix was properly labeled and safe for use." *Id.* ¶ 244.

22        McKesson, by contrast, is hardly mentioned in the Complaint. Indeed, aside

23   from the parties and jurisdiction sections, the Complaint does not *once* mention

24   McKesson. *See* Compl. ¶¶ 104-459. The only facts the Complaint does allege as to

25   McKesson concern its general presence and business activity in California, so as to

26   establish personal jurisdiction, *see id.* ¶¶ 95, 96, 102, 103, and generalized,

27   boilerplate allegations McKesson distributed, sold, or warranted Chantix in the

28   /////

1   State of California and County of Los Angeles, *see id.* ¶¶ 96, 103. Indeed,

2   McKesson is mentioned in only four of the 459 paragraphs in the complaint.

3       Plaintiffs' allegations against McKesson do not support the contention that

4   McKesson violated the law in any way, much less that it was negligent, is strictly

5   liable, breached warranties, or negligently misrepresented anything with respect to

6   Chantix, as the Complaint contends. Plaintiffs attribute no specific wrongful act to

7   McKesson. As this Court recently noted, "While Plaintiffs are in no way required

8   to prove their case, by the same token they cannot avoid a finding of fraudulent

9   joinder by asserting a mere hypothetical possibility of a cause of action against the

10  resident defendant." *Higley v. Cessna Aircraft Co.*, 2010 WL 3184516, at *2 (C.D.

11  Cal. July 21, 2010) (internal quotation marks and brackets omitted); *see also TPS*

12  *Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1103 (C.D. Cal. 2002);

13  *Mannheim v. UnumProvident Corp.*, 2002 WL 1397142, at *2-5 (C.D. Cal. Feb. 7,

14  2002); *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140-42 (C.D. Cal. 1998).

15  That is what has occurred here. Defendant McKesson therefore is fraudulently

16  joined and its citizenship must be disregarded for purposes of diversity jurisdiction.

17  **B.    McKesson is Not a Necessary and Indispensable Party**

18      Alternatively, even if the Court determines that McKesson is not fraudulently

19  joined, the Court should sever and remand Plaintiffs' claims against McKesson

20  pursuant to Federal Rule of Civil Procedure 21 because McKesson is not a

21  necessary and indispensable party under Federal Rule of Civil Procedure 19. Under

22  Rule 21, district courts may sever and remand claims against unnecessary

23  defendants to perfect diversity jurisdiction. *See Newman-Green, Inc. v. Alfonzo-*

24  *Larrain*, 490 U.S. 826, 832 (1989) (stating "it is well-settled that Rule 21 invests

25  district courts with authority to allow a dispensable party to be dropped at any

26  time"). The Ninth Circuit has stated that Rule 21 "is viewed as a grant of

27  discretionary power to the federal court to perfect its diversity jurisdiction by

28  dropping a nondiverse party provided the nondiverse party is not indispensable to

1   the action under Rule 19." *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th

2   Cir. 2003) (internal quotation marks and brackets omitted); *Koehler v. Dodwell*,

3   152 F.3d 304, 308 (4th Cir. 1998) ("[A] party or claim whose presence deprives the

4   court of jurisdiction may be dropped or severed from the action." (citing Fed. R.

5   Civ. P. 21)). Courts may sever claims against even a properly joined party, so long

6   as that party is not necessary and indispensible within the meaning of Rule 19. *See*

7   4 Moore's Federal Practice § 21.05, at 21-20 to -21. ("[C]ourts agree that the Rule

8   may apply even in the absence of misjoinder or nonjoinder.").

9          McKesson is not a necessary and indispensable party to this litigation. It is

10   barely the subject of any allegations in the Complaint, and none of the allegations

11   relating to McKesson concerns any wrongdoing with respect to Chantix. Plaintiff

12   does not allege that McKesson and Pfizer acted in concert; and even if Pfizer and

13   McKesson could be held jointly liable for some of Plaintiffs' alleged injuries, that

14   does not make McKesson a necessary and indispensable party, since "[i]t has long

15   been the rule that it is not necessary for all joint tortfeasors to be named as

16   defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990)

17   (per curiam) (holding that alleged joint tortfeasor physician was not a necessary and

18   indispensable party to products liability action against medical device

19   manufacturer).

20          The severance and remand to state court of Plaintiffs' claims against

21   McKesson will advance the convenience and efficiency of this litigation with little

22   to no prejudice to Plaintiffs. Severance and remand of the McKesson claims will

23   allow the Judicial Panel on Multidistrict Litigation to transfer the claims against

24   Pfizer that remain in federal court to the Chantix MDL. The Chantix MDL was

25   expressly established to coordinate claims regarding "Pfizer's design, testing,

26   manufacture, and marketing of Chantix." *In Re: Chantix (Varenicline) Prods. Liab.*

27   *Litig.*, 655 F. Supp. 2d 1346, 1346 (J.P.M.L. 2009). The JPML determined that

28   centralization and coordination of the Chantix product liability claims will "serve

1  the convenience of the parties and witnesses and promote the just and efficient

2  conduct of the litigation," and will "eliminate duplicative discovery, prevent

3  inconsistent pretrial rulings on discovery and other issues, and conserve the

4  resources of the parties, their counsel and the judiciary." 655 F. Supp. 2d at 1346.

5  To date, the Chantix MDL contains numerous cases alleging claims nearly identical

6  to those asserted against Pfizer in the Complaint here. (Indeed, the Complaint is

7  largely a carbon-copy of the complaints used by other Chantix MDL plaintiffs.)

8      Severance and remand of the claims against McKesson, and subsequent

9  transfer of the claims against Pfizer to the MDL, will help minimize Plaintiffs'

10 costs and expenses.  Plaintiffs will not bear the burden of engaging on their own,

11 and at their sole expense, in discovery against Pfizer, as would occur if the case

12 were to proceed in state court.  Pharmaceutical product liability actions involve

13 complicated discovery issues, with millions of highly technical documents,

14 voluminous electronic databases, numerous depositions, and sophisticated expert

15 opinions.  Pursuing their claims in the MDL will allow Plaintiffs to access the

16 discovery already underway at minimal cost, and they will be able to take

17 advantage of work already being performed by the Plaintiffs' Steering Committee

18 appointed by Judge Johnson.

19     Without the ability to transfer the claims against Pfizer to the MDL, however,

20 the "convenience of the parties and witnesses" and the "just and efficient conduct of

21 the litigation" are undermined, and the purposes of the MDL to "eliminate

22 duplicative discovery, prevent inconsistent pretrial rulings on discovery and other

23 issues, and conserve the resources of the parties, their counsel and the judiciary" are

24 plainly frustrated.  That outcome is not justified simply because of the addition of a

25 few scant, generic allegations against an unnecessary and dispensable defendant.

26 Accordingly, should the court not find McKesson fraudulently joined, it should

27 exercise its discretion to perfect its diversity jurisdiction by severing and remanding

28 /////

1   to state court the claims alleged against McKesson, permitting transfer of the action

2   to the Chantix MDL.

3   **VIII. THE NON-DIVERSE PLAINTIFFS' CITIZENSHIP SHOULD BE DISREGARDED IN ASSESSING COMPLETE DIVERSITY BECAUSE THEY ARE PROCEDURALLY MISJOINED**

5   Even after McKesson's citizenship is disregarded for the reasons stated

6   above, complete diversity must exist between Pfizer and Plaintiffs in order for this

7   Court to exercise diversity jurisdiction.  Four plaintiffs share citizenship with

8   Pfizer:  Derek Charpentier, Ralph Condon, David A. Dubrey, and Renee Singleton

9   (the "New York Plaintiffs").  These non-diverse plaintiffs, however, are

10  procedurally misjoined, and their citizenship should be disregarded when

11  evaluating diversity jurisdiction.

12  Under the doctrine of procedural misjoinder, "a court may disregard the

13  citizenship of certain parties, on either side of the adversarial divide, whose claims

14  lack a common transaction and legal or factual identity." *Burns v. Western S. Life*

15  *Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004).  To determine whether

16  claims are procedurally misjoined, a court looks to permissive joinder rules.

17  Plaintiffs may be joined in a single action only when their claims arise out of the

18  "same transaction, occurrence, or series of transactions or occurrences" and where

19  any "question of law or fact common to all defendants will arise in the action."

20  Fed. R. Civ. P. 20(a).[2]  "Both of these requirements must be satisfied in order to

21  sustain party joinder."  7 Charles A. Wright et al., Federal Practice and Procedure

22  § 1653 (3d ed. 1998).  If a court finds that a non-diverse plaintiff does not satisfy

23  these requirements, the plaintiff is deemed procedurally misjoined, and the

24  appropriate course of action is to sever and remand the claims of that plaintiff "for

25  purposes of maintaining the defendants' right to removal of the remainder of the

26  /////

27  _____

[2] In addressing procedural misjoinder, some district courts look to state, rather than federal, rules of permissive joinder; however, because California and federal permissive joinder rules are "virtually identical," *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504 (E.D. Cal. 2008), the court need not dwell on that issue.

28

1  action." *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 148 (S.D.N.Y.
2  2001).

3        The New York Plaintiffs do not satisfy the requirements of permissive
4  joinder.  As to those plaintiffs, the Complaint alleges only that they suffered various
5  injuries allegedly due to their use of Chantix.  Compl. ¶¶ 10, 73.  But
6  pharmaceutical liability cases around the country have held that allegations of "a
7  similar injury allegedly caused by the same drug" are "insufficient for Rule 20
8  joinder purposes."  *McNaughton v. Merck & Co.*, 2004 WL 5180726, at *2
9  (S.D.N.Y. Dec. 17, 2004).  *See, e.g., Greene v. Wyeth*, 344 F. Supp. 2d 674, 684 (D.
10  Nev. 2004) ("[T]he ingestion of medication among various Plaintiffs alone cannot
11  constitute the 'same transaction or occurrence.'"); *In re Rezulin*, 168 F. Supp. 2d at
12  146 (rejecting joinder where plaintiffs "do not allege that they received [the
13  medication] from the same sources or . . . were exposed to [it] for similar periods of
14  time").[3]  Indeed, in another case from this same Chantix litigation, the district court
15  held that "the mere fact [that] four plaintiffs took Chantix at some point in time and
16  suffered some sort of mental or behavioral side-effect" was "not enough of a logical
17  or factual connection to satisfy the same transaction or occurrence requirement."
18  *Boschert v. Pfizer, Inc.*, 2009 WL 1383183, at *3 (E.D. Mo. May 14, 2009).
19  Accordingly, the mere allegation that the New York Plaintiffs suffered injuries
20  purportedly as a result of consuming Chantix is insufficient to permit his joinder to
21  this case.[4]

22  [3] *Accord Warner v. Stryker Corp.*, 2009 WL 1773170, at *1-2 (D. Or. June 22, 2009); *In re Diet Drugs Prods. Liab.*
    *Litig.*, 294 F. Supp. 2d 667, 678-79 (E.D. Pa. 2003); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31496228, at *1
23  (S.D.N.Y. Nov. 7, 2002); *In re Baycol Prods. Liab. Litig.*, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002); *In re*
    *Diet Drugs Prods. Liab. Litig.*, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999); *Simmons v. Wyeth Labs., Inc.*, 1996
24  WL 617492, at *2-4 (E.D. Pa. Oct. 24, 1996); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 428683, at
    *2, *6 (E.D. Pa. July 17, 1995).
25  [4] Should the Court not conclude that Defendant McKesson was fraudulently joined and not a necessary or
    indispensable party, this same analysis applies to Plaintiffs Robert Eguina, Debra Fletcher, David Johnson, and
26  William Hinckley, all of whom are residents of California and would be non-diverse if McKesson's citizenship were
    considered.  Because, like the New York Plaintiffs, they merely allege injuries purportedly caused by the same
27  medication, they too fail to satisfy the requirements for permissive joinder.  Indeed, because the mere fact that
    plaintiffs ingested a medication and suffered an injury is insufficient for permissive joinder, *all* of the plaintiffs to this
28  case are improperly joined in a single action.  For present purposes, however, the Court need only focus on those

1    Because the New York Plaintiffs are not properly joined to this case, they are

2    procedurally misjoined, and the proper remedy is to sever and remand their claims,

3    as courts have routinely done in similar circumstances. *See Greene*, 344 F. Supp.

4    2d at 685 (holding that "[d]efendants' statutory right of removal has been frustrated

5    by Plaintiffs' improper joinder, and the interests of judicial expediency and justice

6    weigh in favor of severance"); *In re Rezulin*, 2002 WL 31496228, at *1 ("Because

7    the misjoinder of the New York and New Jersey plaintiffs would destroy complete

8    diversity, the Court will sever the claims of those four plaintiffs so as to preserve

9    the defendants' right to removal of the remainder of the action."); *Grennell v.*

10   *Western Southern Life Insurance Co.*, 298 F. Supp. 2d 390 (S.D. W. Va. 2004)

11   (noting that "[t]ypically, the proper remedy for misjoinder of plaintiffs would be

12   severance of all claims and remand of the nondiverse plaintiffs' claims"); *In re*

13   *Rezulin*, 168 F. Supp. 2d at 148; *see also Stone v. Zimmer, Inc.*, 2009 WL 1809990,

14   at *3-4 (S.D. Fla. June 25, 2009); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504-05

15   (E.D. Cal. 2008); *In re Guidant Corp. Implantable Defibrillators Prods. Liab.*

16   *Litig.*, 2007 WL 2572048, at *2-3 (D. Minn. Aug. 30, 2007).

17   That result is particularly compelled by the existence of the Chantix MDL,

18   transfer to which is only possible if the claims of the misjoined non-diverse

19   plaintiffs are severed and remanded. Courts have held that the existence of an

20   MDL militates in favor of finding procedural misjoinder and severing and

21   remanding the misjoined claims. *See Sutton*, 251 F.R.D. at 504-05 (finding

22   defendants' argument "compelling . . . especially in light of the context of" existing

23   MDL, and severing and remanding "to preserve the interests of judicial expediency

24   and justice so that all pre-trial discovery on the products liability case can be

25   coordinated in a single forum"); *In re Guidant*, 2007 WL 2572048, at *2 (severing

26   claim "because of the nature, stage, and progression of [the] MDL"). So too should

27   this Court find that the claims of the New York Plaintiffs (and any other plaintiff

28   plaintiffs whose presence would destroy diversity.

1  whose presence destroys diversity, *see* n.5) are procedurally misjoined and sever

2  and remand those claims to state court, permitting transfer of this case to the federal

3  MDL.[5]

4  **IX.    CONCLUSION**

5          Accordingly, Pfizer respectfully requests that this action now pending against

6  Defendants in the Superior Court of the State of California, County of Los Angeles,

7  be removed to this Court and that this action be placed upon the docket of this

8  Court for further proceedings as though originally instituted in this Court.

9

10  Dated:  July 14, 2011

11                                              DLA PIPER LLP (US)

12                                              By: ⟨signature⟩

13                                              CHRISTOPHER M. YOUNG
                                                Attorneys for Defendant
14                                              Pfizer Inc.

15

16

17

18

19

20

21

22

23

24

25

26  [5] In the event the Court does not conclude that Defendant McKesson was fraudulently joined or not a necessary or indispensable party, but does conclude that the non-diverse plaintiffs' claims are procedurally misjoined and should be severed and remanded (including the California plaintiffs), removal is still proper even though McKesson is a citizen of the forum state, California, notwithstanding 28 U.S.C. § 1441(b).  That is because "'a resident defendant who has not been served may be ignored in determining removability.'"  *Cucci v. Edwards*, 510 F. Supp. 2d 479, 482 (C.D. Cal. 2007) (quoting 14A Charles A. Wright et al., Federal Practice and Procedure § 3723 (2d ed. 1985)).

27

28

# EXHIBIT A

ORIGINAL

A7260

Compleo

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 01 2011

John A. Clarke Executive Officer/Clerk

By _____ Deputy
AMBER LAFLEUR-CLAYTON

DA Richard Rico

J. Paul Sizemore SBN 254981
Sean O. McCrary SBN 276721
2101 Rosecrans Ave., Suite 5290
El Segundo, CA 90245
Telephone: (310) 322-8800
Facsimile: (310)322-8811

*Attorneys for Plaintiffs*

# SUPERIOR COURT OF CALIFORNIA
## LOS ANGELES COUNTY

B C 4 6 4 5 7 9

BY FAX

STEVEN HEDLIN, GINA

MCKLUSKY, JOHN CHRISTOPHER SMITH, MICHAEL

NEWTON, VICKY SNYDER, ALAN TERRIO, JENNIE

TERRIO, HEATHER YOUNG, JERRY HANSON,

CHARLES DOMAN III, MALISSA BRYANT, KATHY

BURNETT, DIXIE CARVALHO, NANCY DUCOTE,

ROBERT EGUINA, JOHN WHITE, DEBRA FLETCHER,

CHARLA FERRELL, ABBY CHARLAND, JOHN

BARTLEY, TAMICA ROBINSON, REBECCA LEE,

SHELLIE JONES, WILLIAM HINCKLEY, ANN GORDON,

THERESA LERCH, SHERRYLYNN COUCH and HENRY

COUCH JR., CHANTAE WILLIAMS, BARRY

BRANDKAMP, JOHN AUSTIN, JR., STEPHAN COOPER,

LISA ROOKS, MARILYN LOCKRIDGE, JAMES LOWE,

MICHELLE RABER, JUDITH LITTLE, FERRAH

SZYMANSKI, JEFFREY HILL, DAVID JOHNSON, AMY

HENDERSON, DEBORAH WELTHER, SANDRA SMITH,

MICHELLE DELUCIA, CASANDRA BOIRE, ERNESTINE

DAVIS, SCOTT CASSADY, RALPH CONDON,

ELIZABETH JAUSEL, SYBRENA MALSOM, ARLENE

KORDICK, KATHY S. DAVIS, DAVID A. DUBREY,

Case No.:

**COMPLAINT FOR DAMAGES DUE TO:**
1. **NEGLIGENCE**
2. **STRICT PRODUCT LIABILITY-DESIGN DEFECT**
3. **STRICT PRODUCT LIABILITY-FAILURE TO WARN**
4. **BREACH OF EXPRESS WARRANTY**
5. **BREACH OF IMPLIED WARRANTY**
6. **FRAUDULENT MISREPRESENTATION AND CONCEALMENT**
7. **NEGLIGENT MISREPRESENTATION AND CONCEALMENT**
8. **GROSS NEGLIGENCE**
9. **UNJUST ENRICHMENT**
10. **PUNITIVE DAMAGES**
11. **VIOLATION OF CONSUMER LEGAL REMEDIES ACT**
12. **LOSS OF CONSORTIUM**
13. **WRONGFUL DEATH**

CIT/CASE: BC464579 LEA/DEF#:
RECEIPT #: CCH63Q057103
DATE PAID: 07/01/11 04:17:30 PM
RECEIVER:
PAYMENT: $945.00

CHECK#:
CASH#:          945.00
CHANGE#:
CARD#:          0310

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

EXHIBIT A, PAGE 16

1   WALTER EMMERSON, LEVI MCCAIN, BOBBY J.

2   HOLLOWELL, MICHAEL HOOD and LAURA HOOD,

3   KANDIEANN D. KLINEDINST, WILBERT LANO JR.,

4   LINDA S. LIEBELT and MICHAEL B. LIEBELT, CAMRIN

5   J. MCDONALD, JIMMY W. MOFFETT, KENNETH

6   NAPIER, AUBREY OXENDINE, CHAROLOTTE

7   PARKER, SANDY M. PRINCE, RENEE SINGLETON,

8   KAY P. SLOCUM, VICTORIA SMALLWOOD, NANCY T.

9   SOUTHERLIN, ROBYN K. SWEITZER, JESSICA TAISTO,

10  KAREN J. WALKER, MICHAEL G. WEYRAUCH,

11  MICHAEL WHEALEY, SHELIA WHITE, ANDRE

12  YOUNG, DEREK CHARPENTIER, individually, and as

13  surviving son of Jessica Charpentier, deceased, SHELBY

14  GIESE is the personal representative of the estate of Laura

15  Giese, deceased, LEROY DEGNER, individually, and as

16  surviving spouse of Marie Degner, deceased, SALLY

17  PORTER is the surviving mother of Dennis Jensen, deceased,

18  PATRICIA HAINES-GENIESSE, individually, and as

19  surviving spouse of Robert Geniesse, deceased, SHEENA

20  ALLEN, individually, and as the surviving spouse of Lew

21  Allen, deceased, CASEY WHITTINGTON, individually, and

22  as the surviving daughter of Robert Watring, deceased,

23  SUSAN CAFRO, individually, and as the mother of Daniel

24  Albrizio, deceased, VIRGINIA TICE, individually, and as the

25  surviving spouse of Dustin Tice, deceased, RUTH JOHNSON,

26  individually, and as surviving spouse of Carl Johnson,

27  deceased, CATHERINE BENNETT, individually, and as

28  surviving spouse of Joseph E. Bennett, deceased, ERIC

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

EXHIBIT A, PAGE 17

1   HOWARD, individually, and as surviving spouse of Storrnis
2   Howard, deceased, EARNESTINE COLBURN, individually,
3   and as surviving spouse of James Colburn, LORENE
4   COLLIER, individually, and as surviving spouse of Freddie
5   Collier, MARTHA WAGES, individually, and as surviving
6   spouse of James Wages II, deceased, JEAN CARROLL,
7   individually, and as surviving spouse of Dennis Shoemaker,
8   deceased,
9   **Plaintiffs,**
10          vs.
11   PFIZER INC., a corporation; MCKESSON
12   CORP., a corporation; and Does 1 through 50,
13          **Defendants,**
14
15   Plaintiffs, STEVEN HEDLIN, GINA MCKLUSKY, JOHN CHRISTOPHER SMITH,
16   MICHAEL NEWTON, VICKY SNYDER, ALAN TERRIO, JENNIE TERRIO, HEATHER
17   YOUNG, JERRY HANSON, CHARLES DOMAN III, MALISSA BRYANT, KATHY
18   BURNETT, DIXIE CARVALHO, NANCY DUCOTE, ROBERT EGUINA, JOHN WHITE,
19   DEBRA FLETCHER, CHARLA FERRELL, ABBY CHARLAND, JOHN BARTLEY,
20   TAMICA ROBINSON, REBECCA LEE, SHELLIE JONES, WILLIAM HINCKLEY, ANN
21   GORDON, THERESA LERCH, SHERRYLYNN COUCH and HENRY COUCH JR.,
22   CHANTAE WILLIAMS, BARRY BRANDKAMP, JOHN AUSTIN, JR., STEPHAN COOPER,
23   LISA ROOKS, MARILYN LOCKRIDGE, JAMES LOWE, MICHELLE RABER, JUDITH
24   LITTLE, FERRAH SZYMANSKI, JEFFREY HILL, DAVID JOHNSON, AMY HENDERSON,
25   DEBORAH WELTHER, SANDRA SMITH, MICHELLE DELUCIA, CASANDRA BOIRE,
26   ERNESTINE DAVIS, SCOTT CASSADY, RALPH CONDON, ELIZABETH JAUSEL,
27   SYBRENA MALSOM, ARLENE KORDICK, KATHY S. DAVIS, DAVID A. DUBREY,
28   WALTER EMMERSON, LEVI MCCAIN, BOBBY J. HOLLOWELL, MICHAEL HOOD and

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

1  LAURA HOOD, KANDIEANN D. KLINEDINST, WILBERT LANO JR., LINDA S. LIEBELT

2  and MICHAEL B. LIEBELT, CAMRIN J. MCDONALD, JIMMY W. MOFFETT, KENNETH

3  NAPIER, AUBREY OXENDINE, CHAROLOTTE PARKER, SANDY M. PRINCE, RENEE

4  SINGLETON, KAY P. SLOCUM, VICTORIA SMALLWOOD, NANCY T. SOUTHERLIN,

5  ROBYN K. SWEITZER, JESSICA TAISTO, KAREN J. WALKER, MICHAEL G.

6  WEYRAUCH, MICHAEL WHEALEY, SHELIA WHITE, ANDRE YOUNG, DEREK

7  CHARPENTIER, individually, and as surviving son of Jessica Charpentier, deceased, SHELBY

8  GIESE is the personal representative of the estate of Laura Giese, deceased, LEROY DEGNER,

9  individually, and as surviving spouse of Marie Degner, deceased, SALLY PORTER is the

10 surviving mother of Dennis Jensen, deceased, PATRICIA HAINES-GENIESSE, individually,

11 and as surviving spouse of Robert Geniesse, deceased, SHEENA ALLEN, individually, and as

12 the surviving spouse of Lew Allen, deceased, CASEY WHITTINGTON, individually, and as the

13 surviving daughter of Robert Watring, deceased, SUSAN CAFRO, individually, and as the

14 mother of Daniel Albrizio, deceased, VIRGINIA TICE, individually, and as the surviving spouse

15 of Dustin Tice, deceased, RUTH JOHNSON, individually, and as surviving spouse of Carl

16 Johnson, deceased, CATHERINE BENNETT, individually, and as surviving spouse of Joseph E.

17 Bennett, deceased, ERIC HOWARD, individually, and as surviving spouse of Stormie Howard,

18 deceased, EARNESTINE COLBURN, individually, and as surviving spouse of James Colburn,

19 LORENE COLLIER, individually, and as surviving spouse of Freddie Collier, MARTHA

20 WAGES, individually, and as surviving spouse of James Wages II, deceased, JEAN CARROLL,

21 individually, and as surviving spouse of Dennis Shoemaker, deceased, (hereinafter "Plaintiffs")

22 allege the following:

23                                    **PARTIES**

24 *Plaintiffs*

25    1. Jerry Hanson ("Mr. Hanson") is a resident of Bemidji, Minnesota.  Mr. Hanson attempted

26 suicide as a result of using the prescription drug Chantix.

27    2. Steven Hedlin ("Mr. Hedlin") is a resident of Clarkston, Utah.  Mr. Hedlin attempted

28 suicide as a result of using the prescription drug Chantix.

3. Gina McKlusky ("Ms. Jones") is a resident of Tuscon, Arizona. Ms. McKlusky attempted suicide as a result of using the prescription drug Chantix.

4. Vicky Snyder ("Ms. Snyder") is a resident of Monongahela, Pennsylvania. Ms. Snyder attempted suicide as a result of using the prescription drug Chantix.

5. Alan Terrio ("Mr. Terrio") is a resident of Waterville, Maine. Mr. Terrio attempted suicide as a result of using the prescription drug Chantix.

6. Jennie Terrio ("Mrs. Terrio") is a resident of Waterville, Maine. Mrs. Terrio attempted suicide as a result of using the prescription drug Chantix.

7. Heather Young ("Ms. Young") is a resident of St. Louis, Missouri. Ms. Young attempted suicide as a result of using the prescription drug Chantix.

8. Michael Newton ("Mr. Newton") is a resident of Ponte Vedra Beach, Florida. Mr. Newton attempted suicide as a result of using the prescription drug Chantix.

9. Robert, Eguina ("Mr. Eguina") is a resident of Grass Valley, California. Mr. Eguina attempted suicide as a result of using the prescription drug Chantix.

10. Nancy Ducote ("Ms. Ducote") is a resident of South Charlotte, North Carolina. Ms. Ducote attempted suicide as a result of using the prescription drug Chantix.

11. Malissa Bryant ("Ms. Bryant") is a resident of Gresham, Oregon. Ms. Bryant attempted suicide as a result of using the prescription drug Chantix.

12. Kathy Burnett ("Ms. Burnett") is a resident of Ames, Iowa. Ms. Burnett attempted suicide as a result of using the prescription drug Chantix.

13. Dixie Carvalho ("Ms. Carvalho") is a resident of Woodstock, Georgia. Ms. Carvalho attempted suicide as a result of using the prescription drug Chantix.

14. Debra Fletcher ("Ms. Fletcher") is a resident of Bakersfield, California. Ms. Fletcher attempted suicide as a result of using the prescription drug Chantix.

15. Shelby Giese is the sister of Laura Giese (hereinafter, "Decedent Giese") who committed suicide on March 28, 2009 as a result of taking Chantix. Decedent Giese resided in Cottage Grove, Wisconsin at the time of her death.

16. Derek Charpentier is the son of Jessica Charpentier (hereinafter, "Decedent Charpentier") who committed suicide in the year 2008 as a result of taking Chantix. Decedent Charpentier resided in Sidney, New York at the time of her death.

17. John White ("Mr. White") is a resident of Saint Paul, Minnesota. Mr. White attempted suicide as a result of using the prescription drug Chantix.

18. Charla Ferrell ("Mrs. Ferrell") is a resident of Graford, Texas. Mrs. Ferrell attempted suicide as a result of using the prescription drug Chantix.

19. Abby Charland ("Ms. Charland") is a resident of South Hadley, Massachusetts. Ms. Charland attempted suicide on two occasions as a result of using the prescription drug Chantix.

20. Jean Carroll is the surviving spouse of Dennis Shoemaker (hereinafter, "Decedent Shoemaker") who committed suicide in February 2009 as a result of using the prescription drug Chantix. Decedent Shoemaker resided in Charlotte, North Carolina at the time of his death.

21. Tamica Robinson ("Ms. Robinson") is a resident of Winston-Salem, North Carolina. Ms. Robinson attempted suicide on two occasions as a result of using the prescription drug Chantix.

22. Rebecca Lee ("Ms. Lee") is a resident of Lebanon, Pennsylvania. Ms. Lee attempted suicide as a result of using the prescription drug Chantix.

23. Leroy Degner is the surviving spouse of Marie Degner (hereinafter, "Decedent Degner") who committed suicide on November 19, 2007 as a result of using the prescription drug Chantix. Decedent Degner resided in Irma, Wisconsin at the time of her death.

24. Sheena Allen is the surviving spouse of Lew Allen (hereinafter, "Decedent Allen") who committed suicide on March 30, 2010 as a result of taking Chantix. Decedent Allen resided in Gig Harbor, Washington at the time of his death.

25. David Johnson ("Mr. Johnson") is a resident of Clarksburg, California. Mr. Johnson attempted suicide as a result of using the prescription drug Chantix.

26. Susan Cafro is the mother of Daniel Albrizio (hereinafter, "Decedent Albrizio") who committed suicide in 2007 as a result of using the prescription drug Chantix. Decedent Albrizio resided in Palmyra, Tennessee at the time of his death.

27. James Lowe ("Mr. Lowe") is a resident of Houston, Texas. Mr. Lowe attempted suicide as a result of using the prescription drug Chantix.

28. Martha Wages is the mother of James Wages II (hereinafter, "Decedent Wages") who committed suicide on September 9, 2007 as a result of taking Chantix. Decedent Wages resided in Sommerville, Tennessee at the time of his death.

29. Virginia Tice is the surviving spouse of Dustin Tice (hereinafter, "Decedent Tice") who committed suicide on August 2, 2007. Decedent Tice resided in Sunbury, Ohio at the time of his death.

30. Casey Whitlington is the daughter of Robert Watring (hereinafter, "Decedent Watring") who committed suicide on September 14, 2010 as a result of taking Chantix. Decedent Watring resided in Cleveland, Ohio at the time of his death.

31. Lisa Rooks ("Ms. Rooks") is a resident of Devine, Texas. Ms. Rooks attempted suicide as a result of using the prescription drug Chantix.

32. Marilyn Lockridge ("Ms. Lockridge") is a resident of Toledo, Ohio. Ms. Lockridge attempted suicide as a result of using the prescription drug Chantix.

33. Judith Little ("Ms. Little") is a resident of Chesterfield, Missouri. Ms. Little attempted suicide as a result of using the prescription drug Chantix.

34. Jeffrey Hill ("Mr. Hill") is a resident of Reynoldsburg, Ohio. Mr. Hill attempted suicide as a result of using the prescription drug Chantix.

35. Amy Henderson ("Ms. Henderson") is a resident of Eldorado, Kansas. Ms. Henderson attempted suicide as a result of using the prescription drug Chantix.

36. Deborah Welther ("Ms. Welther") is a resident of Sebewaing, Michigan. Ms. Welther attempted suicide as a result of using the prescription drug Chantix.

37. Sandra Smith ("Ms. Smith") is a resident of Tulsa, Oklahoma. Ms. Smith attempted suicide as a result of using the prescription drug Chantix.

38. Michelle Delucia ("Ms. Delucia") is a resident of Keyport, New Jersey. Ms. Delucia attempted suicide as a result of using the prescription drug Chantix.

39. Casandra Boire ("Ms. Boire") is a resident of Rock Island, Washington. Ms. Boire attempted suicide as a result of using the prescription drug Chantix.

40. Ernestine Davis ("Ms. Davis") is a resident of Nederland, Texas. Ms. Davis attempted suicide as a result of using the prescription drug Chantix.

41. Scott Cassady ("Mr. Cassady") is a resident of Atlantic Beach, Florida. Mr. Cassady attempted suicide as a result of using the prescription drug Chantix.

42. Ferrah Szymanski ("Ms. Szymanski") is a resident of Sealy, Texas. Ms. Szymanski attempted suicide as a result of using the prescription drug Chantix.

43. Ralph Condon ("Mr. Condon") is a resident of Queensbury, New York. Mr. Condon attempted suicide on two occasions as a result of using the prescription drug Chantix.

44. Henry Couch, Jr. ("Mr. Couch") is a resident of Cleveland, Georgia. Mr. Couch attempted suicide as a result of using the prescription drug Chantix.

45. Elizabeth Jausel ("Ms. Jausel") is a resident of Nashville, Illinois. Ms. Jausel attempted suicide as a result of using the prescription drug Chantix.

46. Ruth Johnson is the surviving spouse of Carl Johnson (hereinafter, "Decedent Johnson") who committed suicide on December 6, 2009 as a result of using the prescription drug Chantix. Decedent Johnson resided in Bridgeport, Ohio at the time of his death.

47. Catherine Bennett is the surviving spouse of Joseph E. Bennett (hereinafter, "Decedent Bennett") who committed suicide on March 27, 2008 as a result of using the prescription drug Chantix. Decedent Bennett resided in Robertsville, Missouri at the time of his death.

48. Patricia Haines-Geniesse is the surviving spouse of Robert Geniesse (hereinafter, "Decedent Geniesse") who committed suicide on October 8, 2009 as a result of taking Chantix. Decedent Geniesse resided in Cary, Illinois at the time of his death.

49. Sally Porter is the surviving mother of Dennis Jensen (hereinafter, "Decedent Jensen") who committed suicide on April 25, 2007 as a result of taking Chantix. Decedent Jensen resided in Fort Collins, Colorado at the time of his death.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

50. John Bartley ("Mr. Bartley") is a resident of Owensboro, Kentucky. Mr. Bartley attempted suicide as a result of using the prescription drug Chantix.

51. Shellie Jones ("Ms. Jones") is a resident of Dothan, Alabama. Ms. Jones attempted suicide as a result of using the prescription drug Chantix.

52. William Hinckley ("Mr. Hinckley") is a resident of Glendale, California. Mr. Hinckley attempted suicide as a result of using the prescription drug Chantix.

53. Michelle Raber ("Ms. Raber") is a resident of Martinsburg, Wisconsin. Ms. Raber attempted suicide as a result of using the prescription drug Chantix.

54. Theresa Lerch ("Ms. Lerch") is a resident of Cranston, Rhode Island. Ms. Lerch attempted suicide as a result of using the prescription drug Chantix.

55. Ann Gordon ("Ms. Gordon") is a resident of Solon Springs, Wisconsin. Ms. Gordon attempted suicide as a result of using the prescription drug Chantix.

56. Chantae Williams ("Mrs. Williams") is a resident of Bellefonte, Pennsylvania. Mrs. Williams attempted suicide as a result of using the prescription drug Chantix.

57. John Christopher Smith ("Mr. Smith") is a resident of Kernersville, North Carolina. Mr. Smith suffered suicidal thoughts and depression as a result of using the prescription drug Chantix.

58. Barry Brandkamp ("Mr. Brandkamp") is a resident of Acworth, Georgia. Mr. Brandkamp attempted suicide as a result of using the prescription drug Chantix.

59. John Austin, Jr. ("Mr. Austin") is a resident of Lake City, Minnesota. Mr. Austin attempted suicide as a result of using the prescription drug Chantix.

60. Stefan Cooper ("Mr. Cooper") is a resident of Naperville, Illinois. Mr. Cooper attempted suicide as a result of using the prescription drug Chantix.

61. Eric Howard is the surviving spouse of Stormie Howard (hereinafter, "Decedent Howard") who committed suicide on September 23, 2010 as a result of taking Chantix. Decedent Howard resided in Phoenix, Arizona at the time of her death.

62. Earnestine Colburn is the surviving spouse of James Colburn (hereinafter, "Decedent Colburn") who committed suicide on February 3, 2009 as a result of taking Chantix. Decedent Colburn resided in Winefield, Alabama at the time of his death.

63. Levi McCain ("Mr. McCain") is a resident of Las Vegas, Nevada.  Mr. Levin attempted suicide as a result of using the prescription drug Chantix.

64. Sybrena Malsom ("Ms. Malsom") is a resident of Globe, Arizona.  Ms. Malsom attempted suicide as a result of using the prescription drug Chantix.

65. Charles Doman, III ("Mr. Doman") is a resident of Philadelphia, Pennsylvania.  Mr. Doman attempted suicide as a result of using the prescription drug Chantix.

66. Lorene Collier is the surviving spouse of Freddie Collier (hereinafter, "Decedent Collier") who committed suicide on October 26, 2008 as a result of taking Chantix. Decedent Collier resided in Chattanooga, Tennessee at the time of his death.

67. Kathy S. Davis ("Ms. Davis") is a resident of Marion, Ohio.  Ms. Davis suffered blackouts/seizures as a result of using the prescription drug Chantix.

68. David A. Dubrey ("Mr. Dubrey") is a resident of Plattsburgh, New York.  Mr. Dubrey suffered blackouts/seizures as a result of using the prescription drug Chantix.

69. Walter R. Emmerson ("Mr. Emmerson") is a resident of Summerfield, Florida.  Mr. Emmerson developed diabetes as a result of using the prescription drug Chantix.

70. Bobby J. Hollowell ("Mr. Hollowell") is a resident of Huntingdon, Tennessee.  Mr. Hollowell suffered seizures and blackouts as a result of using the prescription drug Chantix.

71. Laura Hood ("Mrs. Hood") is a resident of Akron, Ohio.  Mrs. Hood suffered seizures as a result of using the prescription drug Chantix.

72. Kandieann D. Klinedinst ("Mrs. Klinedinst") is a resident of Sykesville, Maryland.  Mrs. Klinedinst suffered seizures as a result of using the prescription drug Chantix.

73. Wilbert Lano Jr. ("Mr. Lano") is a resident of Pennsville, New Jersey.  Mr. Lano developed diabetes as a result of using the prescription drug Chantix.

74. Michael B. Liebelt ("Mr. Liebelt") is a resident of Tonkawa, Oklahoma.  Mr. Liebelt suffered a blackout as a result of using the prescription drug Chantix.

75. Camrin J. McDonald ("Mrs. McDonald") is a resident of Johnson Creek, Wisconsin. Mrs. McDonald suffered seizures as a result of using the prescription drug Chantix.

76. Jimmy W. Moffett ("Mr. Moffett") is a resident of Zachary, Louisiana. Mr. Moffett suffered seizures as a result of using the prescription drug Chantix.

77. Kenneth Napier ("Mr. Napier") is a resident of Fleming Island, Florida. Mr. Napier developed diabetes as a result of using the prescription drug Chantix.

78. Aubrey Oxendine ("Mr. Oxendine") is a resident of Laurinburg, North Carolina. Mr. Oxendine suffered a seizure/stroke as a result of using the prescription drug Chantix.

79. Charlotte Parker ("Ms. Parker") is a resident of Sparta, Wisconsin. Ms. Parker suffered seizures as a result of using the prescription drug Chantix.

80. Sandy M. Prince ("Ms. Prince") is a resident of Orrum, North Carolina. Ms. Prince suffered seizures as a result of using the prescription drug Chantix.

81. Kevin E. Riggle is the surviving spouse of Laurie L. Riggle (hereinafter "Decedent Riggle") who died on January 7, 2010 as a result of using the prescription drug Chantix. Decedent Riggle resided in Gainesville, Georgia at the time of her death.

82. Renee Singleton ("Ms. Singleton") is a resident of Brooklyn, New York. Ms. Singleton developed diabetes as a result of using the prescription drug Chantix.

83. Kay P. Slocum ("Mrs. Slocum") is a resident of Carrolton, Mississippi. Mrs. Slocum developed diabetes as a result of using the prescription drug Chantix.

84. Victoria Smallwood ("Mrs. Smallwood") is a resident of Manassas, Virginia. Mrs. Smallwood suffered blackouts/seizures as a result of using the prescription drug Chantix.

85. Nancy T. Southerlin ("Ms. Southerlin") is a resident of Greenville, South Carolina. Ms. Southerlin developed diabetes as a result of using the prescription drug Chantix.

86. Robyn K. Sweitzer ("Mrs. Sweitzer") is a resident of Ardmore, Tennessee. Mrs. Sweitzer developed diabetes as a result of using the prescription drug Chantix.

87. Jessica Taisto ("Mrs. Taisto") is a resident of Albuquerque, New Mexico. Mrs. Taisto developed diabetes as a result of using the prescription drug Chantix.

88. Karen J. Walker ("Ms. Walker") is a resident of Ashley, Illinois. Ms. Walker developed diabetes as a result of using the prescription drug Chantix.

89. Michael G. Weyrauch ("Mr. Weyrauch") is a resident of Saint Cloud, Minnesota. Mr. Weyrauch developed diabetes as a result of using the prescription drug Chantix.

90. Michael Whealey ("Mr. Whealey") is a resident of Olathe, Kansas. Mr. Whealey suffered blackouts/seizures as a result of using the prescription drug Chantix.

91. Shelia White ("Ms. White") is a resident of Chicago, Illinois. Ms. White suffered blackouts/seizures as a result of using the prescription drug Chantix.

92. Andre Young ("Mr. Young") is a resident of Greensboro, North Carolina. Mr. Young suffered blackouts/seizures as a result of using the prescription drug Chantix.

*Defendants*

93.      Defendant Pfizer Incorporated ("PFIZER" or "Defendant") is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York 10017.

94.      PFIZER is and at all times material to this action was authorized to do business, and engaged in business in the state of California. PFIZER derives substantial revenue from goods consumed within the State of California.

95.      At all times relevant to this action, PFIZER was engaged in the business of developing, researching, designing, testing, developing, manufacturing, advertising, promoting, warranting, and selling in interstate commerce the prescription drug Chantix, either directly or indirectly through third parties or related entities.

96.      Defendant MCKESSON CORPORATION ("MCKESSON") is a Delaware Corporation with its principal place of business at One Post Street, San Francisco, California, 94104. Defendant McKesson Corporation is authorized to do business in the State of California and is engaged in substantial commerce and business activity in the County of Los Angeles.

97.      At all times relevant hereto, MCKESSON was engaged in the business of distributing, selling and/or warranting CHANTIX in the State of California.

COMPLAINT AND DEMAND FOR JURY TRIAL - 12

EXHIBIT A, PAGE 27

98.     The true names and capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs believe and allege that each of the defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

99.     At all times herein alleged, "Defendants" include all herein named Defendants as well as Defendants DOES 1 through 50, inclusive.

### Jurisdiction and Venue

100.    The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." The Statutes under which this action is brought do not specify any other basis for jurisdiction.

101.    The California Superior Court has jurisdiction over all Defendants because, based on information and belief, each is a corporation and/or entity and/or person organized under the laws of the State of California, a foreign corporation or association authorized to do business in California and registered with the California Secretary of State or that has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

102.    Furthermore the Defendants and MCKESSON have purposefully availed themselves of the benefits and the protections of the laws within the State of California. Defendant MCKESSON has its principle place of business within the state. The Defendants and MCKESSON have had sufficient contact such that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

103.    At all times relevant to this Complaint, on information and belief, MCKESSON sold CHANTIX throughout Los Angeles County.

# FACTS

104.    Plaintiff Steven Hedlin was prescribed and used Chantix from approximately April 2009 through May 2009. On approximately May 2009 Mr. Hedlin attempted suicide by overdosing on medication and was hospitalized

105.    Plaintiff Gina McKlusky was prescribed and used Chantix for three months in the year 2008. While taking Chantix Ms. McKlusky attempted suicide by overdosing on medication and was hospitalized.

106.    Plaintiff Jerry Hanson was prescribed and used Chantix from approximately 2009 through July 2010. On approximately July 2010 Mr. Hanson attempted suicide by overdosing on medication and was hospitalized.

107.    Plaintiff Vicky Snyder was prescribed and used Chantix from approximately June 2008 through September 2008. On approximately September 2008 Ms. Snyder attempted suicide by overdosing on medication and was hospitalized.

108.    Plaintiff Alan Terrio was prescribed and used Chantix for a month in 2007. In 2007, while taking Chantix, Mr. Terrio attempted suicide by overdosing on medication and was hospitalized.

109.    Plaintiff Jennie Terrio was prescribed and used Chantix from approximately January 2009 through March 2009. On approximately March 2009 Ms. Terrio attempted suicide by overdosing on medication and was hospitalized.

110.    Plaintiff John Christopher Smith was prescribed and used Chantix for approximately three months beginning in January 2006. On approximately January 2006 Mr. Smith began suffering suicidal thoughts and depression.

111.    Plaintiff Heather Young was prescribed and used Chantix for four or five months in the year 2008. In 2008, while taking Chantix, Ms. Young attempted suicide by overdosing on medication and was hospitalized.

112.    Plaintiff Jerry Hanson was prescribed and used Chantix from approximately 2009 through July 2010. On approximately July 2010 Mr. Hanson attempted suicide by overdosing on medication and was hospitalized.

COMPLAINT AND DEMAND FOR JURY TRIAL - 14

113.    Plaintiff Malissa Bryant was prescribed and used Chantix from approximately October 2008 through November 2008.  On approximately November 2008 Ms. Bryant attempted suicide by overdosing on medication and was hospitalized.

114.    Plaintiff Kathy Burnett was prescribed and used Chantix from approximately May 2009 through October 2009.  On approximately December 2009 Ms. Burnett attempted suicide by overdosing on medication and was hospitalized.

115.    Plaintiff Dixie Carvalho was prescribed and used Chantix from approximately April 2008 through May 2008.  On approximately May 2008 Ms. Carvalho attempted suicide by driving into a tree and was hospitalized.

116.    Plaintiff Nancy Ducote was prescribed and used Chantix from approximately February 2010 through May 2010.  On approximately May 2010 Ms. Ducote attempted suicide by overdosing on medication and by slitting her wrists and was hospitalized.

117.    Plaintiff Debra Fletcher was prescribed and used Chantix from approximately November 2006 through December 2006.  On approximately December 2006 Ms. Fletcher attempted suicide by slitting her wrists and was hospitalized.

118.    Plaintiff Robert Eguina was prescribed and used Chantix from approximately September 2009 through October 2009 or October 2010.  On approximately October 2009 or October 2010 Mr. Eguina attempted suicide by overdosing on medication and was hospitalized.

119.    Decedent Laura Gieso was prescribed and used Chantix from approximately 2009 through March 28, 2009, when she committed suicide by overdosing on medication.

120.    Decedent Jessica Charpentier was prescribed and used Chantix in 2008, while taking Chantix Decedent Charpentier committed suicide by hanging herself.

121.    Plaintiff John White was prescribed and used Chantix from approximately May 2010 through July 2010.  On approximately August 2010 Mr. White attempted to shoot himself and was hospitalized.

122.    Plaintiff Tamica Robinson was prescribed and used Chantix from approximately July 2006 through August 2006.  On approximately August 2006 Ms. Robinson attempted

suicide by overdosing on medication and was hospitalized.  On approximately September 2006 Ms. Robinson attempted suicide again by walking into on coming traffic with her hands taped together, but she blacked out and was taken to the hospital.

123.     Decedent Dennis Shoemaker was prescribed and used Chantix from approximately September 2008 through February 2009, when he committed suicide by shooting himself to death.

124.     Plaintiff Charla Ferrell was prescribed and used Chantix from approximately August 2008 through September 2008.  On approximately October 2008 Mrs. Ferrell attempted suicide by ingesting a bottle of medication and was hospitalized.

125.     Plaintiff Abby Charland was prescribed and used Chantix from approximately November 3, 2008 through January 2009.  On approximately January 2009 Ms. Charland attempted suicide by overdosing on medication and was hospitalized.

126.     Ms. Charland used Chantix again from January 4, 2010 through February 28, 2010, when she attempted suicide again by overdosing on medication and was hospitalized.

127.     Plaintiff Rebecca Lee was prescribed and used Chantix from approximately September 2008 through January 2009.  On approximately January 2009 Ms. Lee attempted suicide by overdosing on medication and was hospitalized.

128.     Ms. Lee was prescribed and used Chantix again from approximately February 2009 through April 2009.  On approximately April 2009 Ms. Lee attempted suicide again by ingesting a bottle of Xanax and was hospitalized.

129.     Decedent Marie Degner was prescribed and used Chantix from approximately October 2007 through November 19, 2007, when she committed suicide by shooting herself to death.

130.     Plaintiff Michelle Raber was prescribed and used Chantix from approximately August 2007 through November 19, 2007.  On approximately November 19, 2007 Mr. Raber attempted suicide by ingesting a bottle of Tylenol PM and was hospitalized.

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

131.     Decedent Robert Watring was prescribed and used Chantix from approximately October 2009 through September 14, 2010, when he committed suicide by shooting himself in the chest.

132.     Plaintiff Lisa Rooks was prescribed and used Chantix for approximately three weeks in February 2009.  On approximately February 2009 Ms. Rooks attempted suicide by overdosing on sleeping pills and Xanax and was hospitalized.

133.     Ms. Rooks was prescribed and used Chantix again from approximately February 2011 through April 2011.  On approximately April 2011 Ms. Rooks attempted suicide by overdosing on Xanax and was hospitalized.

134.     Plaintiff Marilyn Lockridge was prescribed and used Chantix in 2008.  While taking Chantix Ms. Lockridge attempted suicide by overdosing on Chantix and was hospitalized.

135.     Plaintiff Judith Little was prescribed and used Chantix from approximately March 2009 through April 2009.  On approximately April 2009 Ms. Little attempted suicide by ingesting a bottle of prescription medication and was hospitalized.

136.     Plaintiff Jeffrey Hill was prescribed and used Chantix from approximately March 2011 through May 2011.  On approximately May 2011 Mr. Hill attempted suicide by ingesting a bottle of Soma and was hospitalized.

137.     Plaintiff Amy Henderson was prescribed and used Chantix for approximately six weeks in 2008 or 2009.  While taking Chantix Ms. Henderson attempted suicide by overdosing on prescription medication and was hospitalized.

138.     Plaintiff Deborah Welther was prescribed and used Chantix from approximately October 2009 through January 2010.  On approximately January 2010 Ms. Welther attempted suicide by overdosing on several medications and was hospitalized.

139.     Plaintiff Sandra Smith was prescribed and used Chantix for approximately one month in 2006 or 2007.  While taking Chantix Ms. Smith attempted suicide by overdosing several different medications and was hospitalized.

140.    Plaintiff Michelle Delucia was prescribed and used Chantix for a month on approximately May 2010. On approximately May 2010 Ms. Delucia attempted suicide by overdosing on pain medication and was hospitalized.

141.    Plaintiff Casandra Boire was prescribed and used Chantix from approximately October 2008 through January 2009. On approximately January 2009 Ms. Boire attempted suicide by overdosing on pain medication and was hospitalized.

142.    Plaintiff Ernestine Davis was prescribed and used Chantix from approximately July through August of 2007 or 2008. On or about August of 2007 or 2008 Ms. Davis attempted suicide by overdosing on medication and was hospitalized.

143.    Plaintiff Scott Cassady was prescribed and used Chantix for approximately three months in the year 2006. During that time Mr. Cassady attempted suicide by overdosing on medication and cutting his wrists and was hospitalized.

144.    Plaintiff Ralph Condon was prescribed and used Chantix from approximately July 2010 through February 2011. In late 2010 Mr. Condon attempted to shoot himself and was hospitalized. On approximately February 2011 Mr. Condon attempted to shoot himself again and was hospitalized.

145.    Plaintiff Ferrah Szymanski was prescribed and used Chantix from approximately July 2008 through August 2008. On approximately August 2008 Ms. Szymanski attempted suicide by overdosing on medication and was hospitalized.

146.    Plaintiff Henry Couch was prescribed and used Chantix for one month in 2007 or 2008. While taking Chantix Mr. Couch attempted suicide by overdosing on alcohol and Valium and was hospitalized.

147.    Plaintiff Elizabeth Jausel was prescribed and used Chantix from approximately November 2007 through January 2008. On approximately January 2008 Ms. Jausel attempted suicide by overdosing on medication and was hospitalized.

148.    Decedent Carl Johnson was prescribed and used Chantix from approximately September 2009 through October 2009. On December 6, 2009 Mr. Johnson committed suicide by hanging himself.

149.    Decedent Lew Allen was prescribed and used Chantix from approximately March 2010 through March 30, 2010, when he committed suicide by shooting himself to death.

150.    Decedent Joseph Bennett was prescribed and used Chantix from approximately January 2008 through March 27, 2008, when he committed suicide by shooting himself to death.

151.    Decedent James Wages II was prescribed and used Chantix in the year 2007 through September 9, 2007, when he committed suicide by shooting himself to death.

152.    Decedent Robert Geniesse was prescribed and used Chantix from approximately August 25, 2009 through October 8, 2009, when he committed suicide by overdosing on several medications.

153.    Decedent Dennis Jensen was prescribed and used Chantix from approximately March 2007 through April 25, 2007, when he committed suicide.

154.    Decedent Tice was prescribed and used Chantix from approximately July 2007 through August 2, 2007, when he committed suicide by hanging himself.

155.    Decedent Daniel Albrizio was prescribed and used Chantix in 2007. While taking Chantix, Decedent Albrizio committed suicide by overdosing on pills.

156.    Plaintiff David Johnson was prescribed and used Chantix from approximately January 2009 through April 2009.  On approximately April 2009 Mr. Johnson attempted to shoot himself and was hospitalized as a result.

157.    Plaintiff James Lowe was prescribed and used Chantix from approximately September 2010 through November 2010.  On approximately November 2010 Mr. Lowe attempted suicide by ingesting large amounts of alcohol and was hospitalized as a result.

158.    Plaintiff William Hinckley was prescribed and used Chantix from approximately the year 2006 through at least 2011.  On approximately May 2007 Mr. Hinckley suffered a heart attack. While taking Chantix, Mr. Hinckley attempted suicide by overdosing on prescription medication.

COMPLAINT AND DEMAND FOR JURY TRIAL - 19

159.     Plaintiff John Bartley was prescribed and used Chantix from approximately the year 2008 through 2009. While taking Chantix Mr. Bartley attempted suicide by overdosing on sleeping pills and was hospitalized.

160.     Plaintiff Shellie Jones was prescribed and used Chantix from approximately January 2008 through February 2008. On approximately February 2008 Ms. Jones attempted suicide by overdosing on medication and was hospitalized.

161.     Plaintiff Theresa Lerch was prescribed and used Chantix from approximately September 2009 through December 2009. On approximately January 2010 Ms. Lerch attempted suicide by cutting her wrists and was hospitalized.

162.     Plaintiff Ann Gordon was prescribed and used Chantix from approximately May 2009 through August 2009. On or about August 2009 Ms. Gordon attempted suicide by overdosing on medication and was hospitalized.

163.     Plaintiff Chantae Williams was prescribed and used Chantix in the year 2008. While taking Chantix Mrs. Williams attempted suicide by slitting her wrists and was hospitalized.

164.     Plaintiff Barry Brandkamp was prescribed and used Chantix from approximately January 2009 through March 2009. On approximately June 2009 Mr. Brandkamp attempted suicide by overdosing on medication and was hospitalized.

165.     Plaintiff John Austin Jr. was prescribed and used Chantix from approximately September 2008 through October 21, 2008. On approximately October 21, 2008 Mr. Austin attempted to hang himself and was hospitalized.

166.     Plaintiff Stefan Cooper was prescribed and used Chantix for two months in the year 2007. In 2007, while taking Chantix, Mr. Cooper attempted suicide by ingesting a bottle of Tylenol PM and was hospitalized.

167.     Decedent Stormie Howard was prescribed and used Chantix from approximately July 2010 through September 23, 2010, when she committed suicide by overdosing on prescription medication.

COMPLAINT AND DEMAND FOR JURY TRIAL - 20

168.     Decedent James Colburn was prescribed and used Chantix from approximately December 19, 2008 through either January or February 2009.  On approximately January 2009 Decedent Colburn suffered a stroke.  On February 3, 2009 Decedent Colburn committed suicide by shooting to himself to death.

169.     Plaintiff Levi McCain was prescribed and used Chantix in late 2006 for one month.  In late 2006, while taking Chantix, Mr. McCain attempted suicide by ingesting a bottle of antibiotics and any other medication he could find and was hospitalized.

170.     Plaintiff Charles Doman III was prescribed and used Chantix from approximately August 2010 through September 2010.  On approximately September 2010 Mr. Doman attempted suicide by ingesting a bottle of Ambien and was hospitalized.

171.     Decedent Freddie Collier was prescribed and used Chantix from approximately September 2008 through October 26, 2008, when he committed suicide by shooting himself to death.

172.     Plaintiff Sybrena Malsom was prescribed and used Chantix from approximately June 2008 through July 2008.  On approximately July 2008 Ms. Malsom attempted suicide by ingesting a bottle of sleeping pills and was hospitalized.

173.     Plaintiff Arlene Kordick was prescribed and used Chantix for approximately one month in late 2006.  While taking Chantix Ms. Kordick attempted to shoot herself and was hospitalized.  Ms. Kordick took Chantix again in early 2010 and tried to shoot herself again.

174.     Plaintiff Kathy S. Davis was prescribed and used Chantix from approximately April 25, 2010 through May 25, 2010.  On approximately June 2010 Ms. Davis suffered a blackout/seizure while driving, she ran into a guideline and sustained injuries.

175.     Plaintiff David A. Dubrey was prescribed and used Chantix from approximately October 2010 through November 2, 2010.  On November 2, 2010 Mr. Dubrey suffered a blackout/seizure while driving and was in an accident and hospitalized.

176.     Plaintiff Walter R. Emmerson was prescribed and used Chantix from approximately December 2007 through January 2008.  On approximately January 2008 Mr. Emmerson was diagnosed with diabetes.

COMPLAINT AND DEMAND FOR JURY TRIAL - 21

177.     Plaintiff Bobby J. Hollowell was prescribed and used Chantix from approximately May 2009 through July 2009.  On approximately July 2009 Mr. Hollowell experienced a blackout/seizure while working as a fire fighter; he fell off the fire engine and was hospitalized.

178.     Plaintiff Laura Hood was prescribed and used Chantix on March 4, 2007 through March 10, 2007, when she suffered a seizure, went into cardiac arrest and was hospitalized.

179.     Plaintiff Kandieann D. Klinedinst was prescribed and used Chantix from approximately June 2008 through 2009.  Shortly after beginning Chantix Mrs. Klinedinst began experiencing blackouts/seizures, which in some instances resulted in physical injuries. On approximately July 2008 Mrs. Klinedinst was diagnosed with a seizure disorder.

180.     Plaintiff Wilbert Lano Jr. was prescribed and used Chantix from approximately August 2009 through December 2009.  On approximately December 2009 Mr. Lano was diagnosed with diabetes.

181.     Plaintiff Michael B. Liebelt was prescribed and used Chantix from approximately February 2008 through September 2, 2008.  On September 2, 2008, Mr. Liebelt suffered a blackout/seizure that caused him to fall off the back of a truck and sustain injuries.  Mr. Liebelt is permanently disabled as a result of the fall.

182.     Plaintiff Camrin J. McDonald was prescribed and used Chantix from approximately June 2010 through August 7, 2010.  On August 7, 2010 Mrs. McDonald suffered a seizure that caused her to fall and sustain injuries.  Mrs. McDonald had never suffered a seizure prior to taking Chantix.

183.     Plaintiff Jimmy Moffett was prescribed and used Chantix from approximately June 6, 2009 through July 2, 2009.  On August 7, 2009 Mr. Moffett began suffering seizures and was hospitalized.  Prior to taking Chantix Mr. Moffet had never experienced a seizure.

184.     Plaintiff Kenneth Napier was prescribed and used Chantix intermittently from late 2006 through July 2009.  In 2007 Mr. Napier was diagnosed with diabetes.

185.     Plaintiff Aubrey Oxendine was prescribed and used Chantix for one day on December 28, 2009.  Following that first dose Mr. Oxendine suffered a seizure/stroke and was hospitalized.

186.     Plaintiff Charlotte Parker was prescribed and used Chantix from approximately September 2010 through November 2010.  On approximately November 2010 Ms. Parker suffered a seizure that caused her to fall and sustain injuries.  Ms. Parker had never suffered a seizure prior to taking Chantix.

187.     Plaintiff Sandy M. Prince was prescribed and used Chantix from approximately September 2008 through November 2008.  On approximately October 2008 Ms. Prince began suffering from frequent seizures and blackouts.  Ms. Prince had never suffered a seizure or blackout prior to taking Chantix.

188.     Decedent Laurie Riggle was prescribed and used Chantix from approximately March 2009 through November 28, 2009 when she suffered a seizure that caused her to fall and hit her head.  Decedent was hospitalized for approximately six weeks, but she never recovered.  Mrs. Riggle passed away on January 7, 2010.

189.     Plaintiff Rene Singleton was prescribed and used Chantix on July 7, 2010 through October 8, 2010.  On October 8, 2010 Ms. Singleton was diagnosed with diabetes.

190.     Plaintiff Kay Slocum was prescribed and used Chantix from approximately March 2008 through August 27, 2008.  On August 27, 2008 Ms. Slocum was diagnosed with diabetes.

191.     Plaintiff Victoria Smallwood was prescribed and used Chantix on May 4, 2007 for approximately two months.  While taking Chantix Mrs. Smallwood attempted suicide and suffered blackouts.

192.     Plaintiff Nancy T. Southerlin was prescribed and used Chantix from approximately January 2010 through March 2010.  On approximately March 2010 Ms. Southerlin was diagnosed with diabetes.

COMPLAINT AND DEMAND FOR JURY TRIAL – 23

193.    Plaintiff Robyn K. Sweitzer was prescribed Chantix from approximately July 30, 2007 through August 10, 2007. On January 2, 2008 Mrs. Sweitzer was diagnosed with diabetes.

194.    Plaintiff Jessica Taisto was prescribed and used Chantix for approximately one month in October 2009. At the end of October 2009 Mrs. Taisto was diagnosed with diabetes.

195.    Plaintiff Karen J. Walker was prescribed and used Chantix for one month in October 2007. On approximately March 2008 Ms. Walker was diagnosed with diabetes.

196.    Plaintiff Michael G. Weyrauch was prescribed and used Chantix from approximately February 2007 through August 2007. On approximately March 2008 Mr. Weyrauch was diagnosed with diabetes.

197.    Plaintiff Michael Whealey was prescribed and used Chantix on August 28, 2010 through September 12, 2010. On September 12, 2010 Mr. Whealey suffered a blackout/seizure while driving and crashed, injuring himself and two friends. Mr. Whealey had never suffered a blackout/seizure prior to taking Chantix.

198.    Plaintiff Shelia White was prescribed and used Chantix from approximately January 2010 through April 2010. On approximately January 2010 Ms. White began suffering blackouts. On approximately April 23, 2010 Ms. White suffered a heart attack. On approximately July 12, 2010 Ms. White suffered a blackout/seizure while driving, crashed, and was hospitalized.

199.    Plaintiff Andre Young was prescribed and used Chantix from approximately April 2009 through September 2010. On approximately June 2010 Mr. Young suffered a blackout while waiting at the bus stop and was hospitalized.

## GENERAL FACTS

A.    Design, Approval, and Promotion of CHANTIX

200.    CHANTIX, known generically as varenicline, is indicated for use as an aid to quit smoking.

201.     The Defendant requested and received a six-month "accelerated review" and/or "priority review" by the Federal Food and Drug Administration ("FDA") for CHANTIX. On or about May 11, 2006 Chantix was approved by the FDA.

202.     On or about August 1, 2006 Chantix was made available on the market for sale.

203.     After gaining FDA approval, Defendant embarked upon a massive promotional campaign urging patients to use CHANTIX as a smoking cessation aid. Ian Read, Pfizer worldwide president of pharmaceutical operations, reported that the launch of CHANTIX was the biggest in Pfizer's history.

204.     CHANTIX became Pfizer's fastest-growing product, as major media spending on CHANTIX totaled $55 million in 2007 and nearly $60 million in the first 11 months of 2008.  In 2006, the year CHANTIX was launched, Pfizer reportedly spent $4.3 million in medical journal advertisements alone.

205.     Consumer watchdog groups have criticized Pfizer's "sneaky" advertising of CHANTIX. While most companies shrank their unbranded "education" campaign budgets as unbranded advertising declined from 2006 to 2008, Pfizer increased its "education" budget and launched unbranded advertising called My Time to Quit in December 2006. The unbranded "help-seeking" advertising does not mention CHANTIX by name so it does not mention side effects associated with CHANTIX. But, it does encourage people to call a phone number or visit www.mytimetoquit.com, where they can click through to "learn about a prescription treatment option" to quit smoking – that click leads them to the CHANTIX website.

206.     Additionally, Defendant sponsored continuing medical education courses for doctors that showcase CHANTIX as a safe and effective smoking cessation medication, but course materials downplay or omit information about the serious adverse events of CHANTIX and about the types of people excluded from the clinical trials.  Harvard Medical school professor emeritus and former editor of the New England Journal of Medicine Dr. Arnold Relman calls this "unethical, and it is not in the public interest because it is going to bias doctors to use certain drugs."

207.     Upon information and belief, Defendant similarly sponsored free smoking cessation presentations for consumers that also downplayed or omitted information about the serious adverse events of Chantix.

**B.     The Mechanism of Action**

208.     Nicotine in cigarettes activates a4p2 nicotinic acetylcholine subtype receptors in the brain. This triggers a large, immediate release of the neurotransmitter dopamine in the brain's mesolimbic pathway, an area of the brain associated with pleasure, reward-seeking behavior, and reinforcement systems. The spike in dopamine to this "reward center" of the brain accounts for the pleasurable effects of smoking. When the dopamine levels drop after smoking a cigarette, feelings of craving and nicotine withdrawal follow.

209.     CHANTIX is a selective nicotinic-acetylcholine receptor partial agonist, designed to substitute for nicotine and reduce the severity of a smoker's nicotine craving, the withdrawal symptoms from nicotine addiction and the psychological rewards with smoking.

210.     CHANTIX employs a somewhat unique and/or novel mechanism of action that is intended to operate as a both an "agonist" to reduce nicotine craving and withdrawal symptoms and "antagonist" to decrease nicotine craving and reduce the psychological rewards associated with smoking.

211.     CHANTIX employs a somewhat unique and/or novel mechanism of action that is intended to operate as a both an "agonist" to reduce nicotine craving and withdrawal symptoms and "antagonist" to decrease nicotine craving and reduce the psychological rewards associated with smoking.

212.     By binding with high affinity to and partially activating the a4p2 nicotinic acetylcholine subtype receptor - the same one as nicotine activates - the drug causes a constant release of dopamine. Because CHANTIX causes the release of some dopamine, CHANTIX is intended to ease the withdrawal symptoms experienced when not smoking. Because CHANTIX additionally purports to block nicotine from activating the <<alpha>>4<<beta>> 2 receptor and thus preventing the dopamine spike a smoker normally feels, CHANTIX purportedly reduces the rewarding or addictive quality of smoking.

**C.     Failure to Adequately Study CHANTIX**

213.     However, Defendants negligently and/or intentionally failed to properly, fully and/or thoroughly study, test, evaluate, and/or examine CHANTIX's mechanism of action and effects.

214.     Defendant failed to adequately study CHANTIX to determine the risk of serious injury and/or death associated with its use, including

     a.     Intentionally excluding certain patients and populations from clinical trials;

     b.     Intentionally ignoring any proper evaluation of depression, aggression, suicide, suicidal ideation, suicidal thoughts, suicidal tendencies, and other injuries mentioned above like diabetes, etc.;

     c.     Failing to determine what other effects CHANTIX has on other receptors in the human brain and body; and

     d.     Intentionally failing to include appropriate measures of adverse events in clinical trials.

215.     For example, while studies suggest that nearly half of all cigarettes are smoked by people with mental illness, Defendant admitted that "[p]atients with serious psychiatric illness such as schizophrenia, bipolar disorder, and major depressive disorder did not participate in the controlled clinical trial program."

216.     Dr. Daniel Seidman, the director of Smoking Cessation Services at Columbia University Medical Center, is reported to have said: "When they tested the drug, the sample they chose simply isn't representative of the people they're targeting. . . . By excluding drinkers, you're artificially inflating your results, potentially. I run a clinic, and two out of three [smokers] I see have a psychiatric or mood problem. None of these people would have been part of the original trials."

217.     Because of Defendant's systematic exclusion of patients with a history of psychiatric disorders, the safety of Chantix in smokers with psychiatric illness was never established.  But, defendant did not mention this in its labeling until January 2008.

## D. CHANTIX Causes Serious Injury and Death

218.      Defendant knew or should have known that CHANTIX increases the risk of causing serious injuries and death including suicide and attempted suicide and other injuries mentioned herein.

*Clinical Trials Reveal Serious Risk*

219.      Several clinical trials demonstrate the increased risk of serious injury and death associated with CHANTIX and provided Defendant with epidemiological evidence that CHANTIX causes adverse psychiatric disorders and other injurious side effects.

220.      From a 52-week, double-blind, placebo-controlled study conducted between October 2003 and March 2005, Defendant discovered that 20 out of 251 patients on CHANTIX experienced "psychiatric disorders," while only 3 patients out of 126 on a placebo experienced those disorders. The relative risk that CHANTIX patients would suffer psychiatric disorders was more than three-fold that of patients on placebo, a relative risk that was significant both clinically and statistically.  This fact was not disclosed in the publication of the study, on which Kathryn Williams, then employed by Pfizer Global Research and Development, was the lead author.

221.      "Severe adverse events were experienced by 9.8% of the varenicline group and 7.3% of the NRT (nicotine patch) group."12 Further, "[t]hree participants experienced serious adverse events during the non-treatment follow-up phase. . . . [One study participant] A woman in the varenicline group experienced suicidal ideation which resulted in hospitalization 11 days after completing the varenicline treatment.  (She had no previously diagnosed mental and/or psychological disorder.) The study investigator considered this case to be attributable to the study drug."

222.      On July 5, 2006, JAMA published the results of a Pfizer-sponsored study that had been completed over two years earlier in February 2004, in which one of the subjects participating in the study committed suicide.

223.      On July 5, 2006, JAMA also published the results of a randomized, controlled trial completed more than a year earlier in March 2005, which reported cases of serious

COMPLAINT AND DEMAND FOR JURY TRIAL - 28

adverse events associated with varenicline including acute psychosis, emotional liability, insomnia, and abnormal dreams.

224.    PFIZER commissioned Dr. John Hughes to write an "independent expert opinion paper" on the association of smoking, smoking cessation, and cessation medications with suicide. Dr. Hughes reports that about one year after submitting the paper to PFIZER, he converted the report into an article and submitted the article for medical journal publication in February 2008. The published article, which Dr. Hughes notes "retains significant overlap with the expert opinion paper," concluded, inter alia, that the three large studies of smoking abstinence found no evidence supporting the theory that stopping smoking leads to increased suicidality; that an association between Chantix and suicidality existed and required further study; and that even a small risk of suicide with smoking cessation medications "is problematic given that medications are not essential to smoking cessation, i.e., many smokers are able to quit without medication."

*Adverse Event and Case Reports Link CHANTIX with Serious Risk*

225.    Early reports of adverse events provided the Defendants with additional evidence that CHANTIX causes adverse psychiatric disorders.

226.    According to a 2006 report by the European Medical Agency (EMEA), a 61-year-old man committed suicide less than a month after he finished taking CHANTIX. The EMEA's report found CHANTIX had six times the number of serious adverse reactions as the smoking cessation drug Zyban® (bupropion).

227.    In the 4th quarter of 2007, varenicline accounted for 988 serious injuries in the U.S. reported to the FDA, more than any other individual drug in this time period. By comparison, the FDA received a median of 5 reports of serious injury for 769 different drugs in the 4th quarter. Only 35 drugs accounted for 100 or more reports.

228.    From May 2006 through December 2007, the FDA received 227 domestic reports of suicidal acts, thoughts or behaviors, 397 cases of possible psychosis and 525 reports of hostility or aggression. These totals included 28 cases of suicide and 41 mentions of

homicidal ideation, 60 cases of paranoia and 55 cases of hallucination. The categories were not mutually exclusive.

229.     In November 2007, the FDA announced the results of its preliminary assessment of CHANTIX. The FDA specifically highlighted the number of reports noting the association between suicide and attempted suicide "within days to weeks of initiating Chantix treatment."

230.     Many of the cases received and reviewed by the FDA were reported for patients without any prior history of psychiatric illness.

231.     By July 1, 2009, the FDA reported that CHANTIX accounted for 4,762 reports of serious psychiatric events since CHANTIX's 2006 approval. Of these, 188 reported attempted suicide and 98 reported completed suicide.

232.     The adverse drug event reports for varenicline describe other kinds of serious harm for which no warnings now exist. Among the most prominent are:

     a.     *Accidents and injuries.* A total of 173 serious events described accidental injury, including 28 road traffic accidents and 77 falls, some leading to fractures of rib, facial bones, hand, ankle, spine, and lower limbs. In these cases a variety of potential causes were identified, including loss of consciousness, mental confusion, dizziness and muscle spasms.

     b.     *Vision disturbances.* At least 148 reports contained medical terms indicating vision disturbances, including 68 cases described as blurred vision and 26 terms indicating transient or other forms of blindness. This reported effect could also describe a mechanism that could or did contribute to accidents and injuries.

     c.     *Heart rhythm disturbances.* The FDA received 224 domestic reports classified as potential cardiac rhythm disturbances. This category, however, was dominated by reports of sudden loss of consciousness, an event that could also have non-cardiac causes. However, this category also included smaller numbers of cardiac arrests and identifiable abnormal cardiac rhythms.

1        d.    *Seizures and abnormal muscle spasms or movements.* Serious reported

2  events included 86 cases of convulsions (seizures), 372 reports of a wide variety of

3  movement disorders, including tremors, muscle spasms, twitching, tics, drooling, and motor

4  hyperactivity. The extent to which these problems were resolved with a reduced dose or by

5  halting treatment could not be determined from the data.

6        e.    *Diabetes.* The FDA has received 544 reports suggesting varenicline may

7  be related to a loss of glycemic control. This category included many cases of weight loss or

8  gain that could have alternative causes, but also identified numerous cases of symptoms and

9  laboratory tests consistent with new onset diabetes.

10  233.     Numerous case reports have also been published in the medical literature linking

11  CHANTIX with neuropsychiatric symptoms and behavioral changes, especially among those

12  with some preexisting psychiatric history.

13  234.     Despite its repeated denials of a relationship between neuropsychiatric side

14  effects including behavioral changes and CHANTIX use, described further herein, PFIZER

15  admitted to Congress in August 2008 that prior to November 20, 2007, Pfizer had actually

16  received 322 reports of suicidal ideation, 37 reports of suicide attempt/suicidal behavior and

17  16 reports of a completed suicide.

18  **E. Poor Efficacy of CHANTIX**

19  235.     Available data is inconclusive, but suggests the efficacy of CHANTIX appears to

20  be no better than placebo or the nicotine patch.

21  236.     Given all available data, experts remain unconvinced of relative efficacy of

22  CHANTIX and continually express concern about the potential risks associated with using

23  the drug.

24  237.     After reviewing three clinical trials, the experts noted: "Importantly, the majority

25  of participants in these three studies did not quit smoking even with varenicline."

26  Additionally, the authors reviewing the studies concluded "much research needs to be

27  conducted to establish the effectiveness of varenicline . . . ." Although the efficacy evaluation

28  was inconclusive, the greater risks associated with CHANTIX were clear. "First the adverse

effect profile of varenicline . . . reported a rate significantly higher than with either bupropion or placebo." (See Kleges et al., Varenicline for Cessation: Definite Promise But No Panacea, 296 JAMA 94-95 (July 5, 2006).

238.    The results of a Pfizer-funded head-to-head open label trial between CHANTIX and the nicotine patch were published on February 8, 2008. The results of the study demonstrated only slightly better efficacy associated with CHANTIX compared to the nicotine patch. (After 24 weeks, the efficacy for varenicline was reported to be 32.4% compared to the nicotine patch at 27.3%, but this was not considered a statistically significant difference. After 52 weeks, the efficacy for varenicline was reported to be 26.1% compared to the nicotine patch at 20.3%.).

F.    **Pfizer's Repeated Denials of the Risks of CHANTIX**

239.    PFIZER has repeatedly denied the mounting scientific evidence linking CHANTIX to serious injury and death including certain psychiatric side effects and adverse events such as suicide, attempted suicide, and erratic and aggressive behavior and other injuries mentioned herein.

240.    Despite its early internal knowledge that CHANTIX causes neuropsychological side effects, Defendants have diluted its label and prescribing-information by minimizing and questioning the validity of post-marketing reports and epidemiological studies that reported an association between CHANTIX and neuropsychiatric and other side effect.

241.    In a press release dated January 18, 2008, Defendant stated: "A causal relationship between Chantix and these reported symptoms has not been established. In some reports, however, an association could not be excluded." But, PFIZER subtly shifts blame by suggesting nicotine withdrawal caused the reported changes in behavior.

242.    Even after the FDA's February 1, 2008 Public Health Advisory and label change, Defendant continued to misrepresent its internal knowledge to various news agencies, like Reuters, Bloomberg, and the New Jersey Star Ledger, claiming that there is no causal relationship between CHANTIX and these behavioral changes. For example:

a.      Pfizer Medical Director Dr. Anjan Chatterjee: "In the controlled clinical trial, these kinds of changes in behavior were extremely rare, occurring almost as often as the placebo. Based on the tests, we have no evidence of any kind of consistent relationship between Chantix and aggressive behavior."

243.    In May 2008, the non-profit group Institute for Safe Medication Practices (ISMP) warned that CHANTIX evoked "immediate safety concerns." The ISMP analyzed the FDA's adverse event database from the fourth quarter of 2007 and found a "strong signal of multiple safety problems" with CHANTIX and a "strong signal that the risks of varenicline treatment have been underestimated."

244.    Pfizer responded to the May 2008 ISMP report by embarking on a massive and deceptive publicity campaign to downplay the connection between CHANTIX and neuropsychiatric and other adverse events, to question the significance of the ISMP report, and to insist that CHANTIX was properly labeled and safe for use. This organized campaign included:

a.      Running advertisements in major newspapers on May 29, 2008, in which Pfizer Chief Medical Officer Joe Feczko described CHANTIX's risk-benefit profile.

b.      Hosting invitation-only "roundtable" discussion events in the top five U.S. markets for select health reporters and bloggers. According to reports, at the June 5, 2008, roundtable in New York, Pfizer stressed the benefits of quitting smoking; maintained that the then-current labeling was adequate; questioned the significance of the ISMP report because the underlying data was all mostly already in the label, postmarketing reports are not the gold standard of clinical research, and the report was not published in a peer-reviewed journal; and associated smoking and/or quitting smoking with depression, irritability and suicide.

c.      Reviving unbranded television commercials about the importance of smoking cessation, which do not mention CHANTIX by name or CHANTIX's side effects, but which do direct people to CHANTIX as a prescription treatment for smoking cessation.

d.      Sending opinion pieces to newspapers to "address misperceptions and misunderstanding about the safety and efficacy of CHANTIX." For example, Pfizer Chief

COMPLAINT AND DEMAND FOR JURY TRIAL - 33

Medical Officer Dr. Feczko authored an opinion piece in the Wall Street Journal on June 11, 2008, complaining that the media coverage of the ISMP report lacked proper context regarding smoking's dangers and detailing the limitations of the post-marketing adverse-event reporting system.

        e.      Sending letters to healthcare professionals about CHANTIX's risk benefit profile.

245.     Pfizer defended CHANTIX's safety profile while questioning the reliability of the May 2008 ISMP report by issuing a statement saying, in part:

246.     Based on Pfizer and the FDA's continuous review of all available safety information, including adverse event reports received to date, the current CHANTIX label accurately reflects the product's efficacy and safety profile. . . . We understand that the [ISMP's] report was based solely on a review of post-marketing adverse event reporting data. It is important to understand the limitations of spontaneous adverse event reporting. Often these reports lack sufficient medical information and/or have confounding factors that prevent a meaningful assessment of causality.

247.     Pfizer representatives attempted to divert attention from safety issues contained in the report by discussing the benefits of quitting smoking, questioning the reliability of the report's methods, suggesting that the reported neuropsychiatric problems were caused by nicotine withdrawal or even smoking itself, and again misrepresenting its internal knowledge by insisting that the reported behavioral changes were not caused by CHANTIX and that CHANTIX was safe.

248.     The "Dear Doctor" letter that Defendant sent out in May 2008 was similarly deceptive and untimely. The letter purports to provide specific guidance to physicians and patients to help mitigate the health risks of "potential" neuropsychiatric adverse events associated with CHANTIX, but still "realize the full benefits of Chantix." This letter urges doctors to continue using CHANTIX, noting that "Chantix is an important treatment option to help smokers quit, with over 5 million prescriptions written in the United State since its launch," that "smoking is the leading preventable cause of disease and premature death in the

United States" and that "there are few things that provide greater health benefits than quitting smoking." This letter diluted previous information and Defendant's internal knowledge showing CHANTIX was responsible for and caused serious adverse events.

249.    In October 2008, after the ISMP issued another report about the continued "striking" safety signals after CHANTIX had more serious injury reports than any other prescription drugs for a second quarter, Defendant again downplayed the report and deceptively asserted a false safety profile of CHANTIX:

    a.    Pfizer statement: "Based on [the] totality of data, we stand by the efficacy and safety of Chantix when used as directed. Chantix labeling accurately reflects its efficacy and safety event reports and clinical trial data."

    b.    Pfizer statement: "Based on [the] totality of data, we stand by the efficacy and safety of Chantix when used as directed. Chantix labeling accurately reflects its efficacy and safety event reports and clinical trial data."

**G.    PFIZER'S Failure to Warn and Inadequate Warnings**

250.    Though Defendants knew or should have known that CHANTIX posed a risk for causing serious injury and/or death, the CHANTIX label and package insert in use when Plaintiffs' physicians prescribed the drug did not provide Plaintiffs or Plaintiffs' physicians with an adequate warning about the increased risk of serious injury and/or death from CHANTIX.

251.    Pursuant to federal regulations, prescription drug labels must "contain a summary of the essential scientific information needed for safe and effective use." The label "shall be informative and accurate and neither promotional in tone nor false and misleading ...." See generally 21 C.F.R. § 201.56.

252.    Specific information must go in certain label sections:

    a. A Contraindications section "shall describe those situations in which the drug should not be used because the risk of use clearly outweighs any possible benefit. These situations include administration of the drug to patients known to have a hypersensitivity to it. . ." 21 C.F.R. § 201.57(d).

COMPLAINT AND DEMAND FOR JURY TRIAL – 35

b. A Warnings section "shall describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur. The labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved." 21 C.F.R. § 201.57(e).

c. A Precautions section "shall contain information regarding any special care to be exercised by the practitioner for safe and effective use of the drug." 21 C.F.R. § 201.57(f)(1).

d. An Adverse Reactions section would include that which "is an undesirable effect, reasonably associated with the use of the drug that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence." 21 C.F.R. § 201.57(g). But, "any potentially fatal adverse reaction" must be contained in either the Warnings or the Contraindications section. Id.

253.    The information contained in the CHANTIX product label and package insert in use when Plaintiffs were prescribed the drug is insufficient for many reasons, including but not limited to the following: a) the label fails to explicitly warn of increased risk for serious injury and/or death; and, b) the label fails to reference the severity and frequency of such serious injuries; and/or c) the label fails to provide adequate information advising physicians or consumers of appropriate action if certain adverse events are experienced.

254.    Prior to November 20, 2007, the CHANTIX label did not adequately disclose its link with neuropsychiatric adverse effects, including but not limited to depression, agitation, hostility, rage or suicidal behavior.

255.    Though FDA regulations were promulgated precisely to allow drug manufacturers to quickly strengthen label warnings with new evidence of side effects and allow Defendant to unilaterally strengthen warning labels without regulatory pre-approval pursuant to 21 CFR § 314.70(6)(iii)(A), Defendant did not change the CHANTIX label until November 2007.

256.     The November 2007 label change did not adequately warn about the neuropsychiatric and other serious side effects alleged herein, and Defendant consistently minimized and diluted CHANTIX's association with these side effects.

257.     On November 20, 2007, the FDA issued an Early Communication About an Ongoing Safety Review of CHANTIX, stating that "[a] preliminary assessment reveals that many of the cases reflect new-onset of depressed mood, suicidal ideation, and changes in emotion and behavior within days to weeks of initiating Chantix treatment." While noting that smoking cessation itself is associated with nicotine withdrawal symptoms and with the exacerbation of underlying psychiatric illness, the FDA explained that not all patients with reported adverse events had pre-existing psychiatric illness and not all had discontinued smoking.

258.     Concurrent with the FDA Early Communication, Defendant modified the CHANTIX label and prescribing information in November 2007 by adding a short paragraph at the end of the ADVERSE REACTIONS section, on page 16 out of 22 pages, entitled "Post-Marketing Experience" that stated "depressed mood, agitation, changes in behavior, suicidal ideation and suicide" were reported as adverse reactions to CHANTIX use. The information was further diluted by a statement that "[s]moking cessation with or without treatment is associated with nicotine withdrawal symptoms and the exacerbation of underlying psychiatric illness."

259.     While the November 2007 label change noted that not all patients with these reported adverse events "had known pre-existing psychiatric illness and not all had discontinued smoking," the new label also deceptively claimed that the role of CHANTIX in these reports remained unknown. The label change also added that "[p]atients should be advised to use caution driving or operating machinery until they know how quitting smoking with varenicline may affect them."

260.     Defendant changed the CHANTIX label again in January 2008 to reflect what the FDA called "significant new risk information" related to CHANTIX. Again, this label change remained inadequate, and Defendant should have made it much sooner.

261.     The January 2008 change added a WARNINGS section to the label, which had not previously existed, with a paragraph on "Neuropsychiatric Symptoms" that stated:

262.     Serious neuropsychiatric symptoms have occurred in patients being treated with Chantix. Some cases may have been complicated by the symptoms of nicotine withdrawal in patients who stopped smoking; however, some of these symptoms have occurred in patients who continued to smoke. All patients being treated with Chantix should be observed for neuropsychiatric symptoms including changes in behavior, agitation, depressed mood, suicidal ideation and suicidal behavior. These symptoms, as well as worsening of pre-existing psychiatric illness, have been reported in patients attempting to quit smoking while taking Chantix in the post-marketing experience. Patients with serious psychiatric illness such as schizophrenia, bipolar disorder, and major depressive disorder did not participate in the premarketing studies of Chantix and the safety and efficacy of Chantix in such patients has not been established. Patients attempting to quit smoking with Chantix and their families and caregivers should be alerted about the need to monitor for these symptoms and to report such symptoms immediately to the patient's healthcare provider.

263.     The January 2008 label also added a bullet point to the Information for Patients portion of the PRECAUTIONS section of the label, which stated that:

264.     Patients should be informed that quitting smoking, with or without Chantix, may be associated with nicotine withdrawal symptoms (depression, agitation) or exacerbation of pre-existing psychiatric illness. Some patients have experienced depressed mood, agitation, changes in behavior, suicidal ideation and suicide when attempting to quit smoking while taking Chantix. They should be urged to report any such symptoms to their health care providers, and to reveal any history of psychiatric illness prior to initiating treatment.

265.     Contemporaneous with this label change, the FDA issued a Public Health Advisory on February 1, 2008, alerting health care providers, patients, and caregivers to new safety warnings, stating that it is "increasingly likely" that Chantix is associated with serious adverse events, including suicide.

266.     At a press briefing in February 2008, Dr. Bob Rappaport, the FDA's director of the Division of Anesthesia, Analgesia, and Rheumatology Products stated that: "We've become increasingly concerned as there are a number of compelling cases that truly look as if they are the result of exposure to the drug and not to other causes. We've seen cases of patients who had a history of depression, and we have seen cases of people who had no history of depression. These events are occurring sporadically, and at times in people who had no history of psychiatric disease or changes in behavior in the past."

267.     Relying upon newly-enacted statutory authority, in May 2008, the FDA informed Defendant that it was required to submit Risk Evaluation and Mitigation Strategies (REMS) for CHANTIX. The FDA may require REMS when it becomes aware of new safety information of which it had not been made aware at the time of approval and determines that such a strategy is necessary to ensure that the benefits of the drug outweigh the risks.

268.     Changes were made again to the CHANTIX label in May 2008. In the WARNINGS section, a bolded new paragraph replaced the last sentence of the previous WARNING paragraph and stated:

269.     Advise patients and caregivers that the patient should stop taking Chantix and contact a healthcare provider immediately if agitation, depressed mood, or changes in behavior that are not typical for the patient are observed, or if the patient develops suicidal ideation or suicidal behavior.

270.     In May 2008, the Information for Patients portion of the PRECAUTIONS section was also expanded, noting that patients should discontinue Chantix if certain neuropsychiatric or behavioral changes occur, and that "patients should be encouraged to reveal any history of psychiatric illness prior to initiating treatment." This label change remained inadequate, and Pfizer should have made it much earlier.

271.     In May 2008, the FDA also approved the addition of a Medication Guide for CHANTIX to replace the previous Patient Package Insert. This Medication Guide noted that "the most important information [patients] should know about Chantix" is that:

272.    Some patients have had changes in behavior, agitation, depressed mood, and suicidal thoughts or actions while using Chantix to help them quit smoking. Some people had these symptoms when they began taking Chantix, and others developed them after several weeks of treatment or after stopping Chantix. If either you, your family or caregiver notice agitation, depressed mood, or changes in behavior that are not typical for you, or if you develop suicidal thoughts or actions, stop taking Chantix and call your doctor right away. When you try to quit smoking, with or without Chantix, you may have symptoms that may be due to nicotine withdrawal, including urge to smoke, depressed mood, trouble sleeping, irritability, frustration, anger, feeling anxious, difficulty concentrating, restlessness, decreased heart rate, and increased appetite or weight gain. Sometimes quitting smoking can lead to worsening of mental health problems that you already have, such as depression. Before taking Chantix, tell your doctor if you have ever had depression or other mental health problems. You should also tell your doctor about any symptoms you had during other times you tried to quit smoking, with or without Chantix.

273.    The inadequate and untimely label changes of November 2007 and January 2008 did not appear in the Physician's Desk Reference (PDR) until the June 2008 "Supplement A" to the PDR was published, the inadequate and untimely label changes of May 2008 did not appear in the PDR until the 2009 update was published in about December 2008.

274.    On July 1, 2009, the FDA asked Defendant to have a revised label available on its website within 10 days that added a new BLACK BOX WARNING, the most serious warning in the FDA's arsenal, to the CHANTIX label and that revised the WARNINGS and ADVERSE REACTIONS sections. The new black box warning, set out at the very top of the label, reads:

**WARNING:**

275.    Serious neuropsychiatric events, including, but not limited to depression, suicidal ideation, suicide attempt and completed suicide have been reported in patients taking CHANTIX. Some reported cases may have been complicated by the symptoms of nicotine withdrawal in patients who stopped smoking. Depressed mood may be a symptom of nicotine

COMPLAINT AND DEMAND FOR JURY TRIAL - 40

EXHIBIT A, PAGE 55

withdrawal. Depression, rarely including suicidal ideation, has been reported in smokers undergoing a smoking cessation attempt without medication. However, some of these symptoms have occurred in patients taking CHANTIX who continued to smoke.

276. All patients being treated with CHANTIX should be observed for neuropsychiatric symptoms including changes in behavior, hostility, agitation, depressed mood, and suicide-related events, including ideation, behavior, and attempted suicide. These symptoms, as well as worsening of pre-existing psychiatric illness and completed suicide have been reported in some patients attempting to quit smoking while taking CHANTIX in the post-marketing experience. When symptoms were reported, most were during CHANTIX treatment, but some were following discontinuation of CHANTIX therapy.

277. These events have occurred in patients with and without preexisting psychiatric disease. Patients with serious psychiatric illness such as schizophrenia, bipolar disorder, and major depressive disorder did not participate in the pre-marketing studies of CHANTIX and the safety and efficacy of CHANTIX in such patients has not been established.

278. Advise patients and caregivers that the patient should stop taking CHANTIX and contact a healthcare provider immediately if agitation, hostility, depressed mood, or changes in behavior or thinking that are not typical for the patient are observed, or if the patient develops suicidal ideation or suicidal behavior. In many post-marketing cases, resolution of symptoms after discontinuation of CHANTIX was reported, although in some cases the symptoms persisted; therefore, ongoing monitoring and supportive care should be provided until symptoms resolve.

279. The risks of CHANTIX should be weighed against the benefits of its use. CHANTIX has been demonstrated to increase the likelihood of abstinence from smoking for as long as one year compared to treatment with placebo. The health benefits of quitting smoking are immediate and substantial.

280. (See WARNINGS/Neuropsychiatric Symptoms and Suicidally, PRECAUTIONS/Information for Patients, and ADVERSE REACTIONS/Post-Marketing Experience)

281.    In addition to the boxed warning, the information about driving or operating machinery in the PRECAUTIONS section was expanded to note the "post-marketing reports of traffic accidents, near-miss incidents in traffic, or other accidental injuries in patients taking CHANTIX" and that some "patients reported somnolence, dizziness, loss of consciousness or difficulty concentrating that resulted in impairment, or concern about potential impairment, in driving or operating machinery."

282.    And, new information was added to the post-marketing portion of the ADVERSE REACTIONS section related to allergic reactions, such as angioedema and serious life-threatening skin reactions, like Stevens - Johnson syndrome and Erytema Multiforme.

## CAUSES OF ACTION

### COUNT 1:
### NEGLIGENCE

283.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

284.    Defendants owed Plaintiffs a duty to exercise reasonable care when designing, testing, manufacturing, labeling, marketing, advertising, promoting, distributing, and/or selling CHANTIX.

285.    At all relevant times to this action, Defendants owed a duty to properly warn Plaintiffs, physicians, consumers, and the public of the risks, dangers and adverse side effects of CHANTIX, including the increased risk of serious injury and death, when the drug was used as intended or in a way that Defendants could reasonably have anticipated.

286.    Defendants breached their duty by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of CHANTIX, as set forth below.

287.    Defendants failed to exercise due care under the circumstances and therefore breached this duty in numerous ways, including the following:

a. failing to research and test CHANTIX properly and thoroughly before releasing the drug to the market;

b. failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of CHANTIX;

COMPLAINT AND DEMAND FOR JURY TRIAL - 42

c. failing to report to the FDA, the medical community, and the general public those data resulting from pre- and postmarketing tests of CHANTIX which indicated serious risks associated with its use;

d. failing to conduct adequate post-market monitoring and surveillance of CHANTIX;

e. failing to conduct adequate analysis of adverse event reports;

f. designing, manufacturing, marketing, promoting, advertising, distributing, and selling CHANTIX to physicians and consumers, including Plaintiffs, without an adequate warning of he significant and dangerous risks of CHANTIX and without proper instructions to avoid the harm that could foreseeably occur as a result of using the drug;

g. failing to exercise due care when advertising and promoting CHANTIX;

h. negligently continuing to manufacture, market, advertise, and distribute CHANTIX after Defendants knew or should have known of the risks of serious injury and/or death associated with using the drug;

i. failing to use due care in the preparation and development of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

j. failing to use due care in the design of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

k. failing to conduct adequate pre-clinical testing and research to determine the safety of CHANTIX;

l. failing to conduct adequate post-marketing surveillance and exposure studies to determine the safety of CHANTIX, while Defendants knew or should have known that post-marketing surveillance would be the only means to determine the relative risk of CHANTIX for causing serious injury and/or death in the absence of clinical trials, and that such surveillance would be necessary for a due diligence program that would alert Defendants of the need to change the drug's warnings or to withdraw it from the market altogether;

m. failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and postmarketing surveillance and testing to Plaintiffs, Plaintiffs' physicians, other consumers, the medical community, and the FDA;

n. failing to accompany CHANTIX with adequate and proper warnings regarding all possible adverse side effects, including serious injury (e.g., suicide, attempted suicide,

seizure, loss of consciousness, etc.) associated with the use of the same and instructions on ways to safely use CHANTIX to avoid injury;

o. failing to use due care in the manufacture, inspection, and labeling of CHANTIX to prevent the aforementioned risk of injuries to individuals who used the drug;

p. failing to use due care in the promotion of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

q. failing to use due care in the sale and marketing of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

r. failing to use due care in the selling of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

s. failing to provide adequate and accurate training and information to the sales representatives who sold the drug;

t. failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of CHANTIX;

u. failing to conduct or fund research into the development of medications of this type which would pose the least risk of causing serious injury and death as alleged herein, into the early detection of persons who might be most susceptible to such reactions, and into the development of better remedies and treatment for those who experience these tragic adverse reactions;

v. failing to educate healthcare providers, patients, and the public about the safest use of the drug;

w. failing to give patients and healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient; and

x. being otherwise reckless, careless and/or negligent

288.     Despite the fact that Defendants knew or should have known that CHANTIX increased the risk of serious injury and/or death, Defendants continued to promote and market CHANTIX to doctors and to consumers, including Plaintiffs, when safer and more effective methods of treatment were available.

289.     As a direct and proximate consequence of Defendants' negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiffs sustained injuries and damages including severe and

COMPLAINT AND DEMAND FOR JURY TRIAL - 44

permanent physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

290. **WHEREFORE,** Plaintiffs demand judgment against Defendants and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II:
## STRICT PRODUCTS LIABILITY-DESIGN DEFECT

291. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

292. Defendants had a duty to provide adequate warnings and instructions for CHANTIX, to use reasonable care to design a product that is not unreasonably dangerous to users and to adequately test its product.

293. At all times relevant to this action, the Defendants researched, designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted, and sold CHANTIX, placing the drug into the stream of commerce.

294. CHANTIX is defective in its design and/or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

295. CHANTIX was expected to reach, and did reach, users and/or consumers, including Plaintiffs, without substantial change in the defective and unreasonably dangerous condition in which it was manufactured and sold.

296. Plaintiffs used CHANTIX as prescribed and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

297. CHANTIX was unreasonably dangerous in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiffs, including when it was used as intended and in a reasonably foreseeable manner.

298. CHANTIX was unreasonably dangerous and defective in design or formulation for its intended use in that, when it left the hands of the manufacturers and/or supplier, it posed a risk of serious neuropsychiatric and other serious injury which could have been

reduced or avoided, inter alia, by the adoption of a feasible reasonable alternative design. There were safer alternative methods and designs for the like product.

299.    CHANTIX was insufficiently tested and caused harmful side effects that outweighed any potential utility.

300.    CHANTIX, as manufactured and supplied, was defective due to inadequate warnings, and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

301.    CHANTIX as manufactured and supplied by the Defendants was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injuries from use and/or ingestion and acquired additional knowledge and information confirming the defective and dangerous nature of CHANTIX, Defendants failed to provide adequate warnings to the medical community and the consumers, to whom Defendant was directly marketing and advertising; and, further, Defendants continued to affirmatively promote CHANTIX as safe and effective. Even when PFIZER issued label changes, it immediately diluted those changes in its publicity campaigns set forth above.

302.    In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that CHANTIX should not have been marketed in that condition.

303.    As a direct and proximate cause of the Defendants' defective design of CHANTIX, including the lack of appropriate warnings, Plaintiffs were prescribed and used the drug rather than less expensive alternative smoking cessation therapies with better and/or similar efficacy. As a result, Plaintiffs suffered the damages and injuries described herein, including severe and permanent physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

304.    By reason of the foregoing, Defendants are liable to Plaintiffs for damages as a result of the defective design of the dangerous drug.

305.    **WHEREFORE**, Plaintiffs demand judgment against Defendants and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**COUNT III:**
**STRICT PRODUCT LIABILITY-FAILURE TO WARN**

306.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

307.    CHANTIX was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including Plaintiffs, of the dangerous risks and reactions associated with the subject product, including but not limited to the risk of serious injury and/or death, including but not limited to suicidal ideation, attempted suicide and suicide and other injuries mentioned herein like diabetes, etc.

308.    Information given by Defendants to the medical community and to consumers concerning the safety and efficacy of CHANTIX, especially the information contained in the advertising and promotional materials, did not accurately reflect the serious and potentially fatal side effects.

309.    Had adequate warnings and instructions been provided, Plaintiffs would not have been prescribed or taken CHANTIX, and would not have been at risk of the harmful side effects described herein.

310.    Neither Plaintiffs, nor Plaintiffs' physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by CHANTIX.

311.    Defendants knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by CHANTIX.

312.    Plaintiffs, individually and through their prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

313.    Defendants expected Plaintiffs, individually and through their prescribing physicians, to rely upon the information contained in the subject product's package insert and other advertising and promotional materials.

314.    Defendants had a continuing duty to warn Plaintiffs and their prescribing physicians of the dangers associated with the subject product.

315.    Safer alternatives were available that were just as effective and without the risks posed by CHANTIX.

316. As a direct and proximate consequence of the defective nature of CHANTIX and the Defendants' failure to provide adequate warnings about the dangers associated with the drug, the Plaintiffs sustained injuries and damages alleged herein including severe and permanent physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

317. By reason of the foregoing, Defendants are liable to Plaintiffs for damages as a result of its failure to warn and/or adequately warn the Plaintiffs and healthcare professionals about the increased risks of serious injury and death caused by Chantix.

318. **WHEREFORE**, Plaintiffs demand judgment against Defendants and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**COUNT IV:**
**BREACH OF EXPRESS WARRANTY**

319. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

320. Defendants expressly represented to Plaintiffs (and to other consumers and the medical community) that CHANTIX was safe, well-tolerated, efficacious and fit for its intended purposes, that it was of merchantable quality, that it did not produce any unwarned-of dangerous side effects, and that it was adequately tested.

321. Defendants breached expressed warranties with respect to CHANTIX in the following particulars:

a. Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that CHANTIX was safe, and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using CHANTIX;

b. Defendants represented that CHANTIX was as safe, and/or safer than other alternative medications and fraudulently concealed information that demonstrated that CHANTIX was not safer than alternatives available on the market; and

c. Defendants represented that CHANTIX was more efficacious than other alternative medications and fraudulently concealed information regarding the true efficacy of the drug.

322.    CHANTIX does not conform to Defendants' express representations because it is not safe or well-tolerated since it has numerous and serious unwarned of side effects, causes severe and permanent injuries and was not adequately tested, and it is not much more, if at all, efficacious than alternative smoking cessation treatments and methods.

323.    At all relevant times, CHANTIX did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

324.    Plaintiffs, Plaintiffs' physicians, other consumers, and the medical community relied upon Defendants' express warranties, resulting in Plaintiffs' ingestion of the drug.

325.    As a direct and proximate consequence of Defendants' breach of its warranties, the Plaintiffs sustained injuries and damages alleged herein including severe and permanent physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

326.    By reason of the foregoing, Defendants are liable to Plaintiffs for damages as a result of its breach of warranty.

327.    WHEREFORE, Plaintiffs demand judgment against Defendants and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT V:
## BREACH OF IMPLIED WARRANTY

328.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

329.    At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold CHANTIX.

330.    At all relevant times, Defendants intended that CHANTIX be used in the manner that Plaintiffs in fact used it.

331.    Defendants impliedly warranted CHANTIX to be of merchantable quality, safe and fit for the use for which Defendants intended it, and Plaintiffs in fact used it.

COMPLAINT AND DEMAND FOR JURY TRIAL – 49

339.     Defendants breached the implied warranty that CHANTIX was of merchantable quality and fit for such use in violation of Cal. Comm. Code § 2314, et seq.

340.     As a direct and proximate consequence of Defendants' breach of their warranty, the Plaintiffs sustained injuries and damages alleged herein including severe and permanent physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

341.     By reason of the foregoing, Defendants are liable to Plaintiffs for damages as a result of its breach of implied warranty.

342.     WHEREFORE, Plaintiffs demand judgment against Defendants and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VI
## FRAUDULENT MISREPRESENTATION AND CONCEALMENT

343.     Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

344.     Defendant intentionally and fraudulently misrepresented to consumers and physicians, including Plaintiffs, Plaintiffs' physicians and the public in general, that CHANTIX had been tested and found to be safe, well-tolerated and/or more efficacious than alternative medications and/or methods of smoking cessation and that CHANTIX's benefits outweighed its risks when used as instructed, when, in fact, Defendant knew, or should have known, and fraudulently concealed that CHANTIX is dangerous to the well-being of patients and that the benefits of its use are far outweighed by the risks for Plaintiffs and many others.

345.     At all relevant times, Defendant knew of the use for which CHANTIX was intended and expressly and/or impliedly warranted its drug was of merchantable quality and safe and fit for such use.

346.     Defendant had sole access to material facts concerning the dangers and unreasonable risks of CHANTIX.

347.     Defendant's superior knowledge and expertise, its relationship of trust and confidence with doctors and the public, its specific knowledge regarding the risks and dangers of CHANTIX and its intentional dissemination of promotional and marketing

EXHIBIT A, PAGE 65

information about CHANTIX for the purpose of maximizing its sales, each gave rise to the affirmative duty to meaningfully disclose and provide all material information about the risks and harms associated with the drug.

348.     Defendant made false affirmative representations, omissions and/or fraudulently concealed material adverse information regarding the dangers, risks, safety, benefits, utility and effectiveness of CHANTIX in order to induce Plaintiffs, Plaintiffs' physicians, and the public in general to rely upon such representations and to use CHANTIX. By failing to disclose important safety and injury information and suppressing material facts about CHANTIX to Plaintiffs, Plaintiffs' physicians and the public in general, Defendant further led Plaintiffs and Plaintiffs' physicians to rely upon the safety of CHANTIX.

349.     Defendant had a duty to disclose such information, arising from Defendant's actions or making, marketing, promoting, labeling, distributing and selling pharmaceutical products to Plaintiffs and others.

350.     Defendant's false representations and concealments were fraudulently made, in that CHANTIX in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

351.     Defendant committed acts of intentional misrepresentation and intentional concealment by suppressing material facts relating to the dangers and substantial risks of serious injuries and/or death associated with, and caused by, the use of CHANTIX.

352.     Defendant made such false representations, omissions and concealments with the intent or purpose that Plaintiffs and Plaintiffs' physicians would rely upon such representations, leading to the use of CHANTIX by Plaintiffs.

353.     Defendant made fraudulent affirmative misrepresentations and omissions and fraudulent concealments of material facts regarding the safety and effectiveness of CHANTIX and of the dangers and risks of injuries associated with CHANTIX, including:

a.     Defendant fraudulently represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that CHANTIX had been adequately tested and found to be safe and effective as an aid to smoking cessation, and fraudulently concealed information about the substantial risks of serious injury and/or death associated with using CHANTIX; and

b.     Defendant fraudulently represented that CHANTIX was as safe and/or safer and/or more efficacious than other alternative smoking cessation therapies, and fraudulently concealed information that demonstrated that CHANTIX was not safer and/or more efficacious than alternatives available on the market.

354.     Defendant knew, had reason to know, or should have known that these representations and actively concealed adverse information were false, and that CHANTIX had defects and was unreasonably dangerous. Yet, Defendant willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of CHANTIX to consumers, including Plaintiffs, and to the medical community.

355.     Defendant did not have adequate proof upon which to base such representations, and in fact, given Defendant's knowledge about CHANTIX's pharmacology and reported adverse events, Defendant knew or should have known that these representations, omissions and/or concealments were false and fraudulent. Specifically, Defendant knew of, possessed evidence and/or had reason to know that CHANTIX had defects and was unreasonably dangerous, causing neuropsychiatric side effects, including but not limited to depression, agitation, hostility, rage and suicidal thoughts and actions, as detailed herein.

356.     Defendant's misrepresentations were made with the intent that physicians and patients, including Plaintiffs, would rely upon them and were made with the intent of defrauding and deceiving Plaintiffs, other consumers, and the medical community to induce and encourage the sale of CHANTIX.

357.     Plaintiffs, Plaintiffs' physicians, and others, did rely upon and/or were induced by the misrepresentations, omissions and/or active concealment of the dangers of CHANTIX to the detriment of the Plaintiffs.

358.     Defendant's fraudulent representations and concealments evince its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiffs.

359.     In selecting treatment, Plaintiffs' physicians and Plaintiffs relied on and were induced by Defendant's misrepresentations concerning the dangers of CHANTIX.

360.     As detailed herein, Defendant made these fraudulent misrepresentations, omissions and concealments through statements and comments to the press, labeling,

advertising, marketing and promotion materials, detailers, seminar presentations, publications, Dear Doctor letters and regulatory submissions.

361.    Defendant's fraudulent conduct also included manipulating the medical literature. Defendant shaped the medical literature about CHANTIX, such that the literature cannot accurately reflect CHANTIX's dangers. Defendant wrongfully portrayed these conclusions as objective scientific conclusions by medical scientists. For example, the Pfizer-employee-authored report of a pre-clinical study discussed above did not disclose that CHANTIX users suffered psychiatric disorders more than placebo users at a statistically and clinically significant rate.

362.    Defendant did not have adequate proof upon which to base such representations, and in fact, given Defendant's knowledge about CHANTIX's pharmacology and reported adverse events, Defendant knew or should have known that these representations, omissions and/or concealments were false and fraudulent. Specifically, Defendant knew of, possessed evidence and/or had reason to know that CHANTIX had defects and was unreasonably dangerous, causing neuropsychiatric side effects, including but not limited to depression, agitation, hostility, rage and suicidal thoughts and actions, as detailed herein.

363.    Defendant's misrepresentations were made with the intent that physicians and patients, including Plaintiffs, would rely upon them and were made with the intent of defrauding and deceiving Plaintiffs, other consumers, and the medical community to induce and encourage the sale of CHANTIX.

364.    Plaintiffs, Plaintiffs' physicians, and others, did rely upon and/or were induced by the misrepresentations, omissions and/or active concealment of the dangers of CHANTIX to the detriment of the Plaintiffs.

365.    Defendant's fraudulent representations and concealments evince its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiffs.

366.    In selecting treatment, Plaintiffs' physicians and Plaintiffs relied on and were induced by Defendant's misrepresentations concerning the dangers of CHANTIX.

367.    As detailed herein, Defendant made these fraudulent misrepresentations, omissions and concealments through statements and comments to the press, labeling,

COMPLAINT AND DEMAND FOR JURY TRIAL - 54

advertising, marketing and promotion materials, detailers, seminar presentations, publications, Dear Doctor letters and regulatory submissions.

368.    Defendant's fraudulent conduct also included manipulating the medical literature. Defendant shaped the medical literature about CHANTIX, such that the literature cannot accurately reflect CHANTIX's dangers. Defendant wrongfully portrayed these conclusions as objective scientific conclusions by medical scientists. For example, the Pfizer-employee-authored report of a pre- clinical study discussed above did not disclose that CHANTIX users suffered psychiatric disorders more than placebo users at a statistically and clinically significant rate.

369.    Plaintiffs and the treating medical community did not know that the representations, omissions, and/or concealments made by Defendant were false and were justified in reasonably relying upon Defendant's representations.

370.    Had Defendant not fraudulently misrepresented and concealed such information, Plaintiffs would not have ingested CHANTIX and suffered resulting harm.

371.    Defendant made the aforesaid representations and concealments intentionally and in the course of Defendant's business as designers, manufacturers, and distributors of CHANTIX despite having no reasonable basis for the assertion that these representations were true, without having accurate or sufficient information concerning the aforesaid representations and/or knowing these representations were false. Defendant was aware that without such information it could not accurately make the aforesaid representations.

372.    At the time Defendant made the aforesaid representations and at the time Plaintiffs received CHANTIX, Plaintiffs, Plaintiffs' physicians, and the public in general reasonably believed them to be true. At the time that Plaintiffs received CHANTIX, Defendant failed to adequately inform Plaintiffs and/or their prescribing doctors that CHANTIX caused neuropsychiatric side effects, including but not limited to depression, agitation, hostility, rage and suicidal thoughts and actions, despite Defendant being in possession of such evidence. Plaintiffs received no adequate warnings, either written or verbal, that CHANTIX caused these side effects, and relied on these omissions and concealments.

373.    CHANTIX's label changes detailed herein should have come sooner and/or were fraudulent and misleading because they downplayed any association and causal relationship, in spite of Defendant's awareness of causation.

374.    As a direct and proximate consequence of Defendant's fraudulent misrepresentations, omissions and intentional concealment of material facts, upon which Plaintiffs reasonably relied, Plaintiffs sustained injuries and damages alleged herein including severe and permanent physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

375.    By reason of the foregoing, Defendant is liable to Plaintiffs for damages as a result of its fraudulent misrepresentations, omissions and concealments.

376.    **WHEREFORE**, Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VII:
## NEGLIGENT MISREPRESENTATION AND CONCEALMENT

377.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

378.    At all relevant times, Defendant designed, tested, manufactured, packaged, marketed, distributed, promoted, and sold CHANTIX.

379.    At all relevant times, Defendant knew of the use for which CHANTIX was intended and expressly and/or impliedly warranted that the drug was of merchantable quality and safe and fit for such use.

380.    Defendant's superior knowledge and expertise, its relationship of trust and confidence with doctors and the public, its specific knowledge regarding the risks and dangers of CHANTIX and its intentional dissemination of promotional and marketing information about CHANTIX for the purpose of maximizing its sales, each gave rise to the affirmative duty to meaningfully disclose and provide all material information about the risks and harms associated with the drug.

381.    Defendant recklessly and/or negligently represented to Plaintiffs, Plaintiffs' physicians, and other persons and professionals on whom it was known by Defendant that

COMPLAINT AND DEMAND FOR JURY TRIAL – 56

they would rely, that CHANTIX was safe to ingest and that the utility of this product outweighed any risk in use for their intended purposes.

382.    Defendant recklessly and/or negligently failed to disclose to Plaintiffs, and others, important safety and efficacy information, thereby suppressing material facts about the drug, while having a duty to disclose such information, which duty arose from its actions of making, marketing, promoting, distributing and selling pharmaceutical products to Plaintiffs and others.

383.    Defendant led Plaintiffs to rely upon the safety of the product in its use.

384.    The false representations of the Defendant were recklessly and/or negligently made in that CHANTIX in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

385.    Defendant committed acts of reckless and/or negligent misrepresentation and reckless and/or negligent concealment by suppressing material facts relating to the dangers and injuries associated with, and caused by, the use of CHANTIX.

386.    Defendant knew or should have known that its representations and/or omissions were false. Defendant made such false, negligent and/or reckless representations with the intent or purpose that Plaintiffs and Plaintiffs' physicians would rely upon such representations, leading to the use of CHANTIX by Plaintiffs.

387.    Defendant recklessly and/or negligently misrepresented and/or omitted information with respect to CHANTIX in the following particulars:

a.    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that CHANTIX was safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using CHANTIX;

b.    Defendant represented that CHANTIX was as safe and/or safer than other alternative smoking cessation therapies and fraudulently concealed information that demonstrated that CHANTIX was not safer than alternatives available on the market; and

c.    Defendant represented that CHANTIX was more efficacious than other alternative smoking cessation therapies and fraudulently concealed information regarding the true efficacy of the drug.

COMPLAINT AND DEMAND FOR JURY TRIAL – 57

388.    Defendant made affirmative misrepresentations and recklessly and/or negligently omitted material adverse information regarding the safety and effectiveness of CHANTIX.

389.    Defendant made these misrepresentations and/or omissions at a time when Defendant knew or had reason to know that CHANTIX had defects and was unreasonably dangerous and was not what Defendant had represented to the medical and healthcare community, the FDA, and the consuming public, including Plaintiffs.

390.    Defendant omitted, suppressed, and/or concealed material facts concerning the dangers and risk of injuries associated with the use of CHANTIX, including serious injury and death. Furthermore, Defendant's purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of CHANTIX in order to increase sales.

391.    Defendant's misrepresentations and/or omissions were undertaken by Defendant with an intent that doctors and patients, including Plaintiffs, rely upon them.

392.    Defendant's misrepresentations and/or omissions were undertaken with the intent of defrauding and/or deceiving Plaintiffs, other consumers, and the medical community to induce and encourage the sale of CHANTIX.

393.    Defendant's misrepresentations and/or omissions evinced the Defendant's callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiffs.

394.    Plaintiffs' physicians and Plaintiffs relied on and were induced by Defendant's misrepresentations, omissions, and/or active concealment of the dangers of CHANTIX in selecting treatment.

395.    Plaintiffs and Plaintiffs' physicians did not know that the representations made by Defendant were false and were justified in relying upon Defendant's representations.

396.    Had Plaintiffs been aware of the increased risk of side effects associated with CHANTIX and the relative efficacy of CHANTIX compared with other readily available alternative smoking cessation therapies, Plaintiffs would not have taken CHANTIX.

397.    As a direct and proximate consequence of Defendant's misrepresentations, Plaintiffs sustained injuries and damages alleged herein including severe physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

398.   By reason of the foregoing, Defendant is liable to Plaintiffs for damages as a result of its negligent misrepresentations, omissions, and concealment.

399.   **WHEREFORE,** Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VIII
### GROSS NEGLIGENCE

400.   Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

401.   Defendant had a duty to exercise reasonable care in the warning about, design, testing, manufacture, marketing, labeling, sale, and/or distribution of CHANTIX, including a duty to ensure that it did not cause users to suffer from unreasonable and dangerous side effects.

402.   Defendant failed to exercise reasonable care in the warning about, design, testing, manufacture, marketing, labeling, sale, and/or distribution of Defendant's product, CHANTIX, in that Defendant knew or should have known that taking CHANTIX caused unreasonable and life-threatening injuries, as alleged herein.

403.   Defendant was grossly negligent under the circumstances and breached its duty of care in numerous ways, including the following:

   a.   failing to test CHANTIX properly and thoroughly before releasing the drug to the market;

   b.   failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of CHANTIX;

   c.   failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post- marketing tests of CHANTIX which indicated risks associated with its use;

   d.   failing to conduct adequate post-market monitoring and surveillance of CHANTIX;

   e.   failing to conduct adequate analysis of adverse event reports;

q.    failing to use due care in the sale and marketing of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

r.    failing to use due care in the selling of CHANTIX to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

s.    failing to provide adequate and accurate training and information to the sales representatives who sold the drug;

t.    failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of CHANTIX;

u.    failing to conduct or fund research into the development of medications of this type which would pose the least risk of causing such serious injury and death, as alleged herein, into the early detection of persons who might be most susceptible to such reactions, and into the development of better remedies and treatment for those who experience these tragic adverse reactions;

v.    failing to educate healthcare providers, patients, and the public about the safest use of the drug;

w.    failing to give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient; and

x.    being otherwise grossly negligent.

404.    Although Defendant knew, or recklessly disregarded, the fact that Defendant's product, CHANTIX, caused potentially lethal side effects, Defendant continued to market Defendant's product, CHANTIX, to consumers, including Plaintiffs, without disclosing these side effects, including the risks of serious injury and/or death.

405.    Defendant knew and/or consciously or recklessly disregarded the fact that consumers such as Plaintiffs would suffer injury as a result of Defendant's failure to exercise reasonable care as described above.

406.    Defendant knew of, or recklessly disregarded the defective nature of Defendant's product, CHANTIX, as set forth herein, but continued to design, manufacture, market, and sell Defendant's product, CHANTIX, so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs, in conscious and/or reckless disregard of the foreseeable harm caused by Defendant's product, CHANTIX.

407.    As    a    direct and    proximate    consequence of    Defendant's gross negligence, the Plaintiffs sustained injuries and damages alleged herein including severe physical injuries and/or death, severe emotional distress, economic losses and other damages to be proved at trial.

408.    By reason of the foregoing, Defendant is liable to Plaintiffs for damages as a result of its gross negligence.

409.    **WHEREFORE**, Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT IX:
## UNJUST ENRICHMENT

410.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

411.    At all times relevant to this action, Defendant designed, advertised, marketed, promoted, manufactured, distributed, supplied, and/or sold CHANTIX.

412.    Plaintiffs purchased CHANTIX for the purpose of stopping smoking.

413.    Defendant has accepted payment from Plaintiff for the purchase of CHANTIX.

414.    Plaintiffs did not receive the safe and effective pharmaceutical product for which Plaintiffs intended to purchase.

415.    It is inequitable and unjust for Defendant to retain this money because the Plaintiffs did not in fact receive the product Defendant represented CHANTIX to be.

416.    By reason of the foregoing, Plaintiffs are entitled to equitable relief against Defendant on account of its unjust enrichment.

417.    **WHEREFORE**, Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT X:
## PUNTATIVE DAMAGES

418.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

427.    Defendant's conduct detailed herein was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiffs, thereby entitling each Plaintiff to punitive damages in an amount appropriate to punish the Defendant and to deter them from similar conduct in the future.

428.    By reason of the foregoing, Plaintiffs are entitled to punitive damages.

429.    **WHEREFORE**, Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**COUNT XI:**
**VIOLATION OF CONSUMERS LEGAL REMEDIES ACT**

430.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

431.    Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of CHANTIX to Plaintiffs.

432.    Defendant engaged in unfair, unconscionable, deceptive, fraudulent and misleading acts or practices in violation of all states' consumer protection laws, identified below.

433.    Through its false, untrue and misleading promotion of CHANTIX, Defendant induced Plaintiffs to purchase and/or pay for the purchase of CHANTIX.

434.    Defendant misrepresented the alleged benefits and characteristics of CHANTIX; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of CHANTIX; misrepresented the quality and efficacy of CHANTIX as compared to much lower-cost alternatives; misrepresented and advertised that CHANTIX was of a particular standard, quality, or grade that it was not; misrepresented CHANTIX in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiff would have switched from CHANTIX to another smoking cessation option and/or chosen not to purchase and/or reimburse for purchases of CHANTIX; advertised CHANTIX with the intent not to sell it as advertised; and otherwise engaged in fraudulent and deceptive conduct.

435.    Defendant's conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendant's conduct misled, deceived and damaged Plaintiffs, and Defendant's fraudulent, misleading and deceptive conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or paying for purchases of CHANTIX. Moreover, Defendant knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of CHANTIX.

436.    Defendant's conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to Plaintiffs and offends the public conscience.

437.    Plaintiffs purchased CHANTIX primarily for personal, family, or household purposes.

438.    As a result of Defendant's violative conduct, Plaintiffs purchased and/or paid for purchases of CHANTIX that were not made for resale.

439.    Defendant engaged in unfair competition or deceptive acts or practices in violation of Cal. Civ. Code § 1770, et seq. (the "Consumer Legal Remedies Act"), and Cal. Bus. & Prof. Code § 17200 et seq. and § 17500 et seq.

440.    WHEREFORE, Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT XII:
## LOSS OF CONSORTIUM

441.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

442.    At all times relevant hereto the Plaintiffs' spouses ("Spouse Plaintiffs") and/or family members ("Family Member Plaintiffs") and/or domestic partners ("Domestic Partner Plaintiffs") have suffered injuries and losses as a result of the Plaintiffs' injuries.

443.    For the reasons set forth herein, Spouse Plaintiffs and/or Family Member Plaintiffs and/or Domestic Partner Plaintiffs have necessarily paid and have become liable to

pay for medical aid, treatment, and medications, and will necessarily incur further expenses of a similar nature in the future as a proximate result of the Defendant's misconduct.

444.     For the reasons set forth herein, Spouse Plaintiffs and/or Family Member Plaintiffs and/or Domestic Partner Plaintiffs have suffered and will continue to suffer the loss of their loved ones' support, companionship, services, society, love, and affection.

445.     For all Spouse Plaintiffs, Plaintiffs allege their marital relationship has been impaired and depreciated, and the marital association between husband and wife has been altered.

446.     Spouse Plaintiffs and/or Family Member Plaintiffs and/or Domestic Partner Plaintiffs have suffered great emotional pain and mental anguish.

447.     As a direct and proximate result of the Defendant's misconduct, Spouse Plaintiffs and/or Family Member Plaintiffs and/or Domestic Partner. Plaintiffs have sustained injuries and damages alleged herein and other damages to be proved at trial.

448.     By reason of the foregoing, Defendant is liable to Spouse Plaintiffs and/or Family Member Plaintiffs and/or Domestic Partner Plaintiffs for damages as a result of its misconduct. .

449.     **WHEREFORE**, Plaintiffs demand judgment against Defendant and seek damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT XIII:
## WRONGFUL DEATH

450.     Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

451.     Decedent Plaintiffs died as a direct and proximate result of Defendants' misconduct as alleged herein resulting in Decedents' use of CHANTIX and are survived by various family members, named and unnamed.

452.     As a direct and proximate result of the acts and/or omission of Defendants, Decedent's heirs and family have been deprived of her future aid, income, assistance, services, companionship, society, affection and financial support.

453.    Decedent Plaintiffs surviving spouse brings these claims for Decedent Plaintiffs wrongful death and for all damages and pecuniary losses sustained.

454.    The representatives or administrators of Decedent Plaintiffs' estates bring these claims on behalf of the Decedent Plaintiffs' lawful heirs for Decedent's wrongful death.

455.    Decedent Plaintiffs' estate representatives further plead all wrongful death damages allowed by statute and law in the states in which the causes of action have accrued.

### DISCOVERY RULE AND FRAUDULENT CONCEALMENT

454.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' healthcare providers the true and significant risks associated with taking CHANTIX.

455.    As a result of Defendant's actions, Plaintiffs and his/her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Master Complaint, and that those risks were the result of Defendant's acts, omissions, and misrepresentations.

456.    Accordingly, no limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between Plaintiffs' ingestion of CHANTIX and the harm Plaintiffs suffered as a result.

457.    Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

458.    Additionally, Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described.

459.    Additionally, the limitations period ought to be tolled under principles of equitable tolling.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A. Past and future general damages, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at the time of trial;

B. Past and future economic and special damages according to proof at the time of trial;

C. Loss of earnings and impaired earning capacity according to proof at the time of trial;

D. Medical expenses, past and future, according to proof at the time of trial;

E. For past and future mental and emotional distress, according to proof;

F. Punitive damages in an amount sufficient to punish Defendant and set an example;

G. Disgorgement of profits;

H. Restitution;

I. Costs and fees of this action, including reasonable attorney's fees;

J. Prejudgment interest and all other interest recoverable; and

K. Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiffs, by their undersigned counsel, hereby demand a jury trial on all counts in this Complaint.

Dated: the 1st day of July, 2011.

Respectfully submitted,

Dated this July 2, 2011

J. Paul Sizemore
Sean O. McCrary

COMPLAINT AND DEMAND FOR JURY TRIAL - 68



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT AND DEMAND FOR JURY TRIAL - 69

ORIGINAL

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

J. Paul Sizemore (254981)
2101 Rosecrans Ave. Ste 5290
El Segundo, CA 90245

TELEPHONE NO.: (310) 322-8800   FAX NO. *(Name):* (310) 322-8811
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 0 1 2011

John A. Clarke Executive Officer/Clerk
By _____, Deputy
AMBER LAFLEUR-CLAYTON

CASE NAME:
Steven Hedlin et al. v. Pfizer Inc. and McKesson Corp.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC464579 JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action (specify): 13
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 7/1/2011

J. Paul Sizemore
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

BY FAX

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

EXHIBIT A, PAGE 82

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]   **CIVIL CASE COVER SHEET**   Page 2 of 2

EXHIBIT A, PAGE 83

| SHORT TITLE: Steven Hedin et al v. Pfizer Inc., McKesson Corp., Does 1-50 | CASE NUMBER: B C 4 6 4 5 7 9 |
| --- | --- |

ORIGINAL

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES     CLASS ACTION? ○ YES     LIMITED CASE? ○ YES     TIME ESTIMATED FOR TRIAL _____ ☐ HOURS/ ☑ DAYS

**Item II. Indicate the correct district and courthouse location (4 steps – if you checked "Limited Case", skip to Item III, Pg. 4):**

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside..
10. Location of Labor Commissioner's Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
| --- | --- | --- | --- |
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☑ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

EXHIBIT A, PAGE 84

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Steven Hedlin et al v. Pfizer Inc., McKesson Corp., Does 1-50 | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

EXHIBIT A, PAGE 85

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Steven Hedlin et al v. Pfizer Inc., McKesson Corp., Does 1-50 | |

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

EXHIBIT A, PAGE 86

| SHORT TITLE: Steven Hedin et al v. Pfizer Inc., McKesson Corp., Does 1-50 | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: Pfizer Incorporated 235 East 42nd Street, New York, New York 10017 |
|---|---|
| ☑1. ☑2. ☑3. ☑4. ☐5. ☐6. ☐7. ☑8. ☐9. ☐10. | |
| CITY: New York | STATE: NY | ZIP CODE: 10017 |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Superior Court of _____ courthouse in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)]..

Dated: July 1, 2011

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**BY FAX**

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

EXHIBIT A, PAGE 87

# EXHIBIT B

1 | CHRISTOPHER M. YOUNG (Bar No. 163319)
BROOKE KILLIAN KIM (Bar No. 239298)
2 | KATHERINE J. LARSON (Bar No. 259556)
**DLA PIPER LLP (US)**
3 | 401 B Street, Suite 1700
San Diego, CA 92101-4297
4 | Tel: 619.699.2700
Fax: 619.699.2701
5 |
Attorneys for Defendant
6 | PFIZER INC.

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | COUNTY OF LOS ANGELES

10

11 | STEVEN HEDLIN, GINA MCKLUSKY,
JOHN CHRISTOPHER SMITH, MICHAEL
12 | NEWTON, VICKY SNYDER, ALAN
TERRIO, JENNIE TERRIO, HEATHER
13 | YOUNG, JERRY HANSON, CHARLES
DOMAN TH, MALISSA BRYANT,
14 | KATHY BURNETT, DIXIE CARVALHO,
NANCY DUCOTE, ROBERT EGUINA,
15 | JOHN WHITE, DEBRA FLETCHER,
CHARLA FERRELL, ABBY CHARLAND,
16 | JOHN BARTLEY, TAMICA ROBINSON,
REBECCA LEE, SHELLIE JONES,
17 | WILLIAM HINCKLEY, ANN GORDON,
THERESA LERCH, SHERRYLYNN
18 | COUCH and HENRY COUCH JR.,
CHANTAE WILLIAMS, BARRY
19 | BRANDKAMP, JOHN AUSTIN, JR.,
STEPHAN COOPER, LISA ROOKS,
20 | MARILYN LOCKRIDGE, JAMES LOWE,
MICHELLE RABER, JUDITH LITTLE,
21 | FERRAH SZYMANSKI, JEFFREY HILL,
DAVID JOHNSON, AMY HENDERSON,
22 | DEBORAH WELTHER, SANDRA SMITH,
MICHELLE DELUCIA, CASANDRA
23 | BOIRE, ERNESTINE DAVIS, SCOTT
CASSADY, RALPH CONDON,
24 | ELIZABETH JAUSEL, SYBRENA
MALSOM, ARLENE KORDICK, KATHY
25 | S. DAVIS, DAVID A. DUBREY, WALTER
EMMERSON, LEVI MCCAIN, BOBBY J.
26 | HOLLOWELL, MICHAEL HOOD and
LAURA HOOD, KANDIEANN D.
27 | KLINEDINST, WILBERT LANO JR.,
LINDA S. UBBELT and MICHAEL B.
28 | LIEBELT, CAMRIN J. MCDONALD,
JIMMY W. MOFFETT, KENNETH

CASE NO. BC464579

**NOTICE OF FILING NOTICE OF
REMOVAL BY DEFENDANT PFIZER
INC.**

Dept: 17
Judge: Hon. Richard E. Rico

Complaint: July 1, 2011

1   NAPIER, AUBREY OXENDINE,
    CHAROLOTTE PARKER, SANDY M.
2   PRINCE, RENEE SINGLETON, KAY P.
    SLOCUM, VICTORIA SMALL WOOD,
3   NANCY T. SOUTHERL1N, ROBYN K.
    SWEITZER, JESSICA TAISTO, KAREN J.
4   WALKER, MICHAEL G. WEYRAUCH,
    MICHAEL WHEALEY, SHELIA WHITE,
5   ANDRE YOUNG, DEREK CHARPENTIER,
    individually, and as surviving son of Jessica
6   Charpentier, deceased, SHELBY GIESE is
    the personal representative of the estate of
7   Laura Giese, deceased, LEROY DEGNER,
    individually, and as surviving spouse of
8   Marie Degner, deceased, SALLY PORTER is
    the surviving mother of Dennis Jensen,
9   deceased, PATRICIA HAINES-GENIESSE,
    individually, and us surviving spouse of
10  Robert Geniesse, deceased, SHEEN A
    ALLEN, individually, and as the surviving
11  spouse of Lew Allen, deceased, CASEY
    WHITTINGTON, individually, and as the
12  surviving daughter of Robert Warring,
    deceased, SUSAN CAFRO, individually, and
13  as the mother of Daniel Albrizio, deceased,
    VIRGINIA TICE, individually, and as die
14  surviving spouse of Dustin Tice, deceased,
    RUTH JOHNSON, individually, and as
15  surviving spouse of Carl Johnson, deceased,
    CATHERINE BENNETT, individually, and
16  as surviving spouse of Joseph E. Bennett,
    deceased, ERIC HOWARD, individually, and
17  as surviving spouse of Stormie Howard,
    deceased, EARNEST1NE COLBURN,
18  individually, and as surviving spouse of
    James Colburn, LORENE COLLIER,
19  individually, and as surviving spouse of
    Freddie Collier, MARTHA WAGES,
20  individually, and as surviving spouse of
    James Wages II, deceased, JEAN
21  CARROLL, individually, and as surviving
    spouse of Dennis Shoemaker, deceased,

22                     Plaintiffs,

23          v.

24  PFIZER INC., a corporation; MCKESSON
25  CORP., a corporation; DOES 1-50,

26                     Defendants.

27

28

DLA PIPER US LLP
SAN DIEGO

EASTM5084432.1                          -2-

NOTICE OF FILING NOTICE OF REMOVAL

1 TO THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE

2 COUNTY OF LOS ANGELES, AND TO ALL PARTIES AND THEIR ATTORNEYS OF

3 RECORD:

4     PLEASE TAKE NOTICE that a Notice of Removal of this action was filed in the United

5 States District Court for the Central District of California on July 14, 2011.

6     PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. section 1446(d), the

7 filing in Federal Court of the Notice of Removal, together with the filing in this Court of a copy

8 of the Notice of Removal, effects the removal of this action and the State Court proceeding may

9 proceed no further unless and until this action is remanded by the Federal District Court.

10 28 U.S.C. § 1446(d).

11     A copy of the Notice of Removal is attached to this Notice as Exhibit 1.

12 Dated:  July 14, 2011

13                     DLA PIPER LLP (US)

14

15                     By

16                     CHRISTOPHER M. YOUNG

                        Attorneys for Defendant

17                     PFIZER INC.

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

EAST\45084432.1              -3-

NOTICE OF FILING NOTICE OF REMOVAL

1    CHRISTOPHER M. YOUNG (Bar No. 163319)
     christopher.young@dlapiper.com
2    BROOKE KILLIAN KIM (Bar No. 239298)
     brooke.kim@dlapiper.com
3    KATHERINE J. LARSON (Bar No. 259556)
     katherine.larson@dlapiper.com
4    **DLA PIPER LLP (US)**
     401 B Street, Suite 1700
5    San Diego, CA  92101-4297
     Tel: 619.699.2700
6    Fax: 619.699.2701

7    Attorneys for Defendant
     Pfizer Inc.

8

9                    SUPERIOR COURT OF CALIFORNIA

10                     COUNTY OF LOS ANGELES

11

12   STEVEN HEDLIN, GINA MCKLUSKY,          CASE NO.  BC464579
     JOHN CHRISTOPHER SMITH, MICHAEL
     NEWTON, VICKY SNYDER, ALAN            **PROOF OF SERVICE**
13   TERRIO, JENNIE TERRIO, HEATHER
     YOUNG, JERRY HANSON, CHARLES          Dept: 17
14   DOMAN TH, MALISSA BRYANT, KATHY       Judge:  Hon. Richard E. Rico
     BURNETT, DIXIE CARVALHO, NANCY
15   DUCOTE, ROBERT EGUINA, JOHN           Complaint: July 1, 2011
     WHITE, DEBRA FLETCHER, CHARLA
16   FERRELL, ABBY CHARLAND, JOHN
     BARTLEY, TAMICA ROBINSON,
17   REBECCA LEE, SHELLIE JONES,
     WILLIAM HINCKLEY, ANN GORDON,
18   THERESA LERCH, SHERRYLYNN
     COUCH and HENRY COUCH JR.,
19   CHANTAE WILLIAMS, BARRY
     BRANDKAMP, JOHN AUSTIN, JR.,
20   STEPHAN COOPER, LISA ROOKS,
     MARILYN LOCKRIDGE, JAMES LOWE,
21   MICHELLE RABER, JUDITH LITTLE,
     FERRAH SZYMANSKI, JEFFREY HILL,
22   DAVID JOHNSON, AMY HENDERSON,
     DEBORAH WELTHER, SANDRA SMITH,
23   MICHELLE DELUCIA, CASANDRA
     BOIRE, ERNESTINE DAVIS, SCOTT
24   CASSADY, RALPH CONDON,
     ELIZABETH JAUSEL, SYBRENA
25   MALSOM, ARLENE KORDICK, KATHY S.
     DAVIS, DAVID A. DUBREY, WALTER
26   EMMERSON, LEVI MCCAIN, BOBBY J.
     HOLLOWELL, MICHAEL HOOD and
27   LAURA HOOD, KANDIEANN D.
     KLINEDINST, WILBERT LANO JR.,
28   LINDA S. UBBELT and MICHAEL B.

| | |
|---|---|
| 1 | LIEBELT, CAMRIN J. MCDONALD, JIMMY W. MOFFETT, KENNETH |
| 2 | NAPIER, AUBREY OXENDINE, CHAROLOTTE PARKER, SANDY M. |
| 3 | PRINCE, RENEE SINGLETON, KAY P. SLOCUM, VICTORIA SMALL WOOD, |
| 4 | NANCY T. SOUTHERLIN, ROBYN K. SWEITZER, JESSICA TAISTO, KAREN J. |
| 5 | WALKER, MICHAEL G. WEYRAUCH, MICHAEL WHEALEY, SHELIA WHITE, |
| 6 | ANDRE YOUNG, DEREK CHARPENTIER, individually, and as surviving son of Jessica |
| 7 | Charpentier, deceased, SHELBY GIESE is the personal representative of the estate of Laura |
| 8 | Giese, deceased, LEROY DEGNER, individually, and as surviving spouse of Marie |
| 9 | Degner, deceased, SALLY PORTER is the surviving mother of Dennis Jensen, deceased, |
| 10 | PATRICIA HAINES-GENIESSE, individually, and us surviving spouse of |
| 11 | Robert Geniesse, deceased, SHEEN A ALLEN, individually, and as the surviving |
| 12 | spouse of Lew Allen, deceased, CASEY WHITTINGTON, individually, and as the |
| 13 | surviving daughter of Robert Warring, deceased, SUSAN CAFRO, individually, and |
| 14 | as the mother of Daniel Albrizio, deceased, VIRGINIA TICE, individually, and as die |
| 15 | surviving spouse of Dustin Tice, deceased, RUTH JOHNSON, individually, and as |
| 16 | surviving spouse of Carl Johnson, deceased, CATHERINE BENNETT, individually, and |
| 17 | as surviving spouse of Joseph E. Bennett, deceased, ERIC HOWARD, individually, and |
| 18 | as surviving spouse of Stormie Howard, deceased, EARNESTINE COLBURN, |
| 19 | individually, and as surviving spouse of James Colburn, LORENE COLLIER, individually, |
| 20 | and as surviving spouse of Freddie Collier, MARTHA WAGES, individually, and as |
| 21 | surviving spouse of James Wages II, deceased, JEAN CARROLL, individually, and as |
| 22 | surviving spouse of Dennis Shoemaker, deceased, |
| 23 | Plaintiffs, |
| 24 | v. |
| 25 | PFIZER INC., a corporation; MCKESSON |
| 26 | CORP., a corporation; DOES 1-50, |
| 27 | Defendants. |
| 28 | |

-2-

DLA PIPER LLP (US)
San Diego

EAST\45159894.1

PROOF OF SERVICE

1

### PROOF OF SERVICE BY MAIL

2      I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within cause. My business address is DLA Piper LLP (US), 401 B Street,
3      Suite 1700, San Diego, California 92101-4297.

4      I served the below listed document(s) described as:

5      **NOTICE OF FILING NOTICE OF REMOVAL BY DEFENDANT PFIZER INC.**
6
       on July 14, 2011, on the following parties to this cause by mailing a copy of the above
7      document(s) as follows:

8      <u>Counsel for Plaintiffs</u>

9      J. Paul Sizemore, Esq.
       Sean O. McCrary, Esq.
10     2101 Rosecrans Avenue, Suite 5290
       El Segundo, CA 90245
11     Telephone: 310.322.8800
       Facsimile: 310.322.8811
12

13     I am familiar with the office practice of DLA Piper LLP (US) for collecting and processing documents for mailing with the United States Postal Service, which practice is that
14     when documents are deposited with the DLA Piper LLP (US) personnel responsible for depositing documents with the United States Postal Service, such documents are delivered to the
15     United States Postal Service that same day in the ordinary course of business with postage thereon fully prepaid. I placed a sealed envelope containing the document(s) in DLA Piper's San
16     Diego interoffice mail, addressed to the above parties.

17     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
18
       Executed on July 14, 2011, at San Diego, California.
19

20                                        _Bonnie K. Lott_
21                                        Bonnie K. Lott

22

23

24

25

26

27

28

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

STEVEN HEDLIN, et al.

(Please see attachment for additional Plaintiffs))

**DEFENDANTS**

PFIZER INC., a corporation; MCKESSON CORP., a corporation;
DOES 1-50

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)

J. Paul Sizemore

Sean O. McCrary

2101 Rosecrans Ave., Suite 5290

El Segundo, CA 90245

310.322.8800

Attorneys (If Known)

Christopher M. Young

Brooke Killian Kim

DLA Piper LLP (US)

401 B Street, Suite 1700

San Diego, CA 92101-4297

Tel: 619.699.2700

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Negligence, Strict Products Liability; Misrepresentation/Concealment, CLRA, Warranty

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Accommodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☒ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities-Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **LACV11-5801**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATE    STRICT COURT, CENTRAL DISTRICT   CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes
If yes, list case number(s): 2:09-CV-2039-IPJ MDL Case No. 2092 (N.D. Alabama)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                      ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                      ☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                      ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Nevada County             35 States Other Than California<br>Kern County<br>Yolo County |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Francisco County (Defendant fraudulently joined); Delaware and New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Nevada County             35 States Other Than California<br>Kern County<br>Yolo County |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _(signature)_    Date July 14, 2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

Attachment to
United States District Court, Central District of California
Civil Cover Sheet

I(a) Plaintiffs continued from Page 1:

GINA MCKLUSKY, JOHN CHRISTOPHER SMITH, MICHAEL NEWTON, VICKY
SNYDER, ALAN TERRIO, JENNIE TERRIO, HEATHER YOUNG, JERRY
HANSON, CHARLES DOMAN TH, MALISSA BRYANT, KATHY BURNETT,
DIXIE CARVALHO, NANCY DUCOTE, ROBERT EGUINA, JOHN WHITE, DEBRA
FLETCHER, CHARLA FERRELL, ABBY CHARLAND, JOHN BARTLEY, TAMICA
ROBINSON, REBECCA LEE, SHELLIE JONES, WILLIAM HINCKLEY, ANN
GORDON, THERESA LERCH, SHERRYLYNN COUCH and HENRY COUCH JR.,
CHANTAE WILLIAMS, BARRY BRANDKAMP, JOHN AUSTIN, JR., STEPHAN
COOPER, LISA ROOKS, MARILYN LOCKRIDGE, JAMES LOWE, MICHELLE
RABER, JUDITH LITTLE, FERRAH SZYMANSKI, JEFFREY HILL, DAVID
JOHNSON, AMY HENDERSON, DEBORAH WELTHER, SANDRA SMITH,
MICHELLE DELUCIA, CASANDRA BOIRE, ERNESTINE DAVIS, SCOTT
CASSADY, RALPH CONDON, ELIZABETH JAUSEL, SYBRENA MALSOM,
ARLENE KORDICK, KATHY S. DAVIS, DAVID A. DUBREY, WALTER
EMMERSON, LEVI MCCAIN, BOBBY J. HOLLOWELL, MICHAEL HOOD and
LAURA HOOD, KANDIEANN D. KLINEDINST, WILBERT LANO JR., LINDA S.
UBBELT and MICHAEL B. LIEBELT, CAMRIN J. MCDONALD, JIMMY W.
MOFFETT, KENNETH NAPIER, AUBREY OXENDINE, CHAROLOTTE PARKER,
SANDY M. PRINCE, RENEE SINGLETON, KAY P. SLOCUM, VICTORIA SMALL
WOOD, NANCY T. SOUTHERL1N, ROBYN K. SWEITZER, JESSICA TAISTO,
KAREN J. WALKER, MICHAEL G. WEYRAUCH, MICHAEL WHEALEY, SHELIA
WHITE, ANDRE YOUNG, DEREK CHARPENTIER, individually, and as surviving
son of Jessica Charpentier, deceased, SHELBY GIESE is the personal representative of
the estate of Laura Giese, deceased, LEROY DEGNER, individually, and as surviving
spouse of Marie Degner, deceased, SALLY PORTER is the surviving mother of Dennis
Jensen, deceased, PATRICIA HAINES-GENIESSE, individually, and us surviving
spouse of Robert Geniesse, deceased, SHEEN A ALLEN, individually, and as the
surviving spouse of Lew Allen, deceased, CASEY WHITTINGTON, individually, and as
the surviving daughter of Robert Warring, deceased, SUSAN CAFRO, individually, and
as the mother of Daniel Albrizio, deceased, VIRGINIA TICE, individually, and as die
surviving spouse of Dustin Tice, deceased, RUTH JOHNSON, individually, and as
surviving spouse of Carl Johnson, deceased, CATHERINE BENNETT, individually, and
as surviving spouse of Joseph E. Bennett, deceased, ERIC HOWARD, individually, and
as surviving spouse of Stormie Howard, deceased, EARNEST1NE COLBURN,
individually, and as surviving spouse of James Colburn, LORENE COLLIER,
individually, and as surviving spouse of Freddie Collier, MARTHA WAGES,
individually, and as surviving spouse of James Wages II, deceased, JEAN CARROLL,
individually, and as surviving spouse of Dennis Shoemaker, deceased